No. 8120.

STATE OF LOUISIANA EX REL. WINTZ VS. JUDGE CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS.

Relator, having refused to answer a question propounded to him by the grand jury, was brought to the bar of the Criminal District Court of the Parish of Orleans and there ordered by the Court to answer the question, which he still refused to do; whereupon he was committed for contempt.

He applies for a writ of *Certiorari* and asks that this Court, in the exercise of its constitutional supervisory power, should review said proceedings and declare them null and void.

*Held* that the writ of *Certiorari* is limited to cases where it appears, on the face of the record, that the proceedings complained of are absolutely null. In the case at bar, the record shows no irregularity in the proceedings, and it is not understood that any such charge is preferred against them. The application must be refused.

Carleton Hunt and C. H. Lavillebeuvre for the Relator.

The opinion of the Court was delivered by

FENNER, J. The relator in this case being confined in the Parish Prison under a sentence and commitment by defendant for contempt of court, obtained from this Court a writ of *certiorari*, directed to defendant commanding him to send us a certified copy of his proceedings in the premises, and he prays that, in the exercise of our general supervision over the Criminal District Court, we may review the said proceedings and declare them null and void.

The only certified copy of proceedings brought up under the writ is a copy of the commitment, which recites simply :

"Whereas, Frederick Wintz was, by due form of law, adjudged before our Criminal District Court to be in willful and criminal contempt of the authority of said Court, and sentenced on the 24th day of December, 1880, to suffer imprisonment in the Parish Prison for the term of five days. Now, therefore, etc."

It appears, however, generally, from both the relator's petition and the return of the judge, that the Grand Jury of the parish came into open Court and reported, through their foreman, that the relator, a witness duly subpoenaed and sworn before the said Grand Jury, had refused to answer a certain interrogatory to him propounded by the said grand jury ; that the judge then called him to the bar of the Court, and directed him to answer the question ; and that relator then stated to the judge in open Court that he would not answer to said interrogatory ; and that, thereupon, and for his said disobedience to its order, the Court committed him for contempt of its authority.

The record, thus epitomized and stripped of adventitious circumstances, unquestionably discloses a case in which, by proceedings perfectly regular, the Court has exercised its discretionary jurisdiction to

enforce its authority and to punish contempt thereof by a penalty not exceeding the bounds of its power to inflict.

It is settled that a court has authority to compel a witness to testify before a grand jury organized and acting under its direction.

2d Bishop, Cr. L. § 273.

"For a witness not to attend when subpœnaed ; for a witness, when attending, to refuse to be sworn ; for a witness, when sworn, to refuse to answer," are enumerated as among the most common instances of contempt of court.

Wharton Cr. L. § 3432 ; 2 Bishop Cr. L. § 253.

These are offenses committed in the face of the Court, directly obstructive of the administration of justice, and punishable by summary commitment, without the delay incident to ordinary contradictory proceedings, upon the broad principle, that " men, placing themselves in opposition to the machinery of the law, are necessarily borne down by it, because the machinery will move on."

2 Bishop, Cr. L. § 241.

The proceedings, so far as the record exposes them to our view, are open to no charge of irregularity, and we do not understand that any such charge is preferred against them.

The purposes for which the writ of *certiorari* may be employed, are indicated by its name and are clearly pointed out in the articles of the Code of Practice.

It is a mandate simply calling upon the inferior judge to send up a certified copy of proceedings complained of.   Art. 855.

No other duty or return is required of the judge except simply to send the certified copy of the record or proceedings called for.   Art. 861.

The object of the writ is confined to the setting aside of " proceedings absolutely void, as when the judge has refused to hear the party or his witnesses, or has pronounced sentence without having cited him to appear."   Art. 857.

The examples given indicate the nature of the abuses intended to be remedied by the writ.   Our examination is confined to the certified record, and our power to annul is only to be exercised when it appears, on the face of the record, that " the proceedings are null."   Art. 864.

On the other hand it is provided that " if the Court finds that the proceedings have been *regular*, it shall dissolve the writ."   Art. 865.

From these provisions it is apparent that the only subject of examination under the writ of certiorari is the *modus procedendi*, the regularity of *proceedings*.   It was never intendeded as a mode of revising the decisions of inferior courts upon questions of law arising in the course of judicial proceedings properly submitted to them for decision which they must decide, and in the decision of which they must exercise

judicial discretion.   It is not disputed that the question, whether or not a witness shall answer an interrogatory addressed to him when under examination in the regular course of judicial proceedings, is one which the court has the power to decide and must decide, and when, after hearing and consideration, it has decided, "the machinery of the law must move on." If, after every such decision, the witness ordered to answer might bring the proceedings to a halt until on a writ of *certiorari* the correctness of such decision might be reviewed and passed on by this Court, the trial of a cause or the investigations of a grand jury would never come to an end.

In the first case which presented a question arising under our supervisory jurisdiction, we took occasion to lay down some general rules by which we should be guided in its exercise, and we then said : " In the exercise of the power, we wish it distinctly understood that we shall respect the independence of inferior courts in the determination of all questions confided to their judicial discretion, and shall not usurp merely appellate jurisdiction not conferred upon us by the Constitution."

State ex rel. City vs. Judge, 32 A.

To this rule we must adhere in the present case.

The point upon which our decision is invoked in this application, is the question of error *vel non* in the decision of the court overruling the objections urged by the witness against answering the particular interrogatory addressed to him and ordering him to answer.   It would be conceded that if the decision be correct and the order to answer proper, the refusal to obey was contempt and the punishment thereof lawful.   The only grounds for relief are that the objections of the witness were valid, the decision overruling them erroneous, the order to answer illegal, and, therefore, the refusal to obey not punishable as a contempt.

We have not deemed it necessary to state the character of the interrogatory, nor the nature of the objections raised by the witness, nor the reasons of the judge for overruling them.   It suffices to say that the objections raised a question of constitutional law, which it was the province and duty of the court to decide, which it decided after hearing and in due course of proceeding, and, as we are bound to presume, according to conscience and honest opinion.   For us to review and pass upon the correctness of that decision would be " to usurp merely appellate jurisdiction not conferred upon us by the Constitution," and to apply the remedial writ of *certiorari* to purposes entirely foreign to those contemplated by the laws regulating the same.

The proceedings subjected to our inspection are regular, orderly and in conformity with all rules of procedure, and we only obey the mandate of article 865 of the Code of Practice in refusing the relief sought.

State ex rel. Wintz vs. Judge Criminal District Court.

To suggestions as to the absence of other adequate remedy, we can only say that it is not our province to provide remedies for wrongs, real or imaginary, but only to administer, according to law, remedies provided by law. All power is liable to abuse, and power conferred must be accompanied with trust. It is impossible to provide remedies against every abuse of power and still less against every error in its exercise. We are far from insinuating that there has been abuse, or even error, in the exercise of the judicial power conferred upon our learned brother of the District Court. But even if there were, and even if relator were a sufferer thereby, and even if the law provided him no redress, his case would merely illustrate the inevitable imperfections of all human devices to secure an infallible administration of justice and flawless protection of rights.

We are thoroughty satisfied the Constitution intended that our supervisory jurisdiction should be distinct, in nature as well as in name, from our appellate jurisdiction. The former was intended simply to enable us to compel inferior courts to perform their functions, to prevent them from exceeding the bounds of their jurisdiction, and to enforce the observance of that regularity in their proceedings which is essential to fairness in the conduct of contradictory litigation.

Mere error in the decision of questions properly submitted to their determination and regularly determined, can only be corrected in the exercise of a jurisdiction purely appellate.

It is, therefore, ordered that the application in this case be refuesd.