SIMON, Justice.
Writs, with a stay order, were granted to review the ruling of the district judge, holding the relator guilty of contempt of Court for refusing to answer questions propounded to him in connection with its inquiry into the offense of public bribery, on the ground that, such answers thereto *289 would tend to incriminate and subject him to criminal prosecution under Federal as well as State law.
From an examination of the proceedings had below, the following appear to be the continuity of facts in the matter:
On March 1, 1955, relator, claiming his privilege against self-incrimination, refused to answer certain questions propounded to him at a hearing before the Orleans Parish Grand Jury. Upon his refusal, he was immediately brought before Honorable J. Bernard Cocke, Judge of Section “E” of the Criminal District Court, where he again refused, in the presence of the presiding judge, to answer the identical questions previously propounded to him. As a result of this refusal he was adjudged guilty of contempt of Court and sentenced to be confined 10 days in the parish prison and to pay a fine of $100. In default of payment of the fine, relator was ordered to be confined an additional 10 days. Application to this Court for supervisory writs to review the judgment of contempt was denied.
Under this conviction and sentence, relator began serving the mandatory jail sentence thus imposed, at 4:20 p. m., March 1, 1955. This sentence necessarily would expire at 4:20 p. m., March 11, 1955, conditioned upon relator paying the fine of $100.
On the tenth day of his confinement, or March 11, 1955,-at about the hour of 10:00 a. m., relator paid the fine of $100 in cash to a deputy sheriff and received an identifying receipt therefor. On the same morning, relator’s attorney, upon being apprised of the payment, immediately complained to the criminal sheriff that said payment was contrary to his orders and therefore made in error and requested return of the amount paid. It was returned, and the receipt was surrendered to the criminal sheriff, who marked “Void” across its face. At 4:30 p. m. on March 11, 1955, relator was again brought before the grand jury of Orleans Parish, where he again refused to answer practically the same questions previously propounded to him on March 1, 1955, invoking the plea against self-incriminatiori as previously urged. Thereupon he was again brought into court, before Honorable Niels F. Hertz, Judge of Section “F” of the Criminal District Court, and a second proceeding for contempt was had. Objections to this contempt proceeding were overruled, and the court ordered relator to answer the questions so propounded. Upon his refusal, the trial court adjudged him in contempt and imposed the sentence of 10 days confinement in the parish prison and a fine of $100, and, in default of the payment of said fine, imprisonment for an additional 10 days.
The legal questions posed by relator are:
(1) Whether on March 11, 1955, at 4:30 p. m., he was actually serving the previous sentence imposed on March 1, *291 1955, therefore not legally amenable to the contempt proceeding had on that date.
(2) Whether relator can he punished for contempt in separate consecutive proceedings for refusal to answer the same questions propounded in each proceeding and arising out of the same circumstances.
(3) In an investigation involving public bribery, can a witness who enjoys the constitutional immunity against the use against him of answers given to questions propounded therein, refuse to answer said questions on the ground of self-incrimination in charges of crimes committed against the State now pending against him in the State court?
(4) Whether a person may invoke the Fifth Amendment of the Constitution of the United States and refuse to divulge information or to testify in connection with an inquiry conducted by the State involving the crime of public bribery, notwithstanding his enjoyment of constitutional immunity from criminal prosecution in the State courts, on the ground that his disclosures and testimony could subject him to the danger of prosecution, or aid in the furtherance of pending Federal charges against him involving the violation of a Federal statute growing out of gambling operations and brought by indictment returned to the Federal Court whose territorial jurisdiction embraces the State court from which this contempt proceeding arises.
Respondent urges that upon the payment of the fine by relator, the mandatory sentence of imprisonment expired at 4:20 p. m. on March 11, 1955, and as a result thereof he was relieved from any further imprisonment imposed for nonpayment thereof, notwithstanding the fact that the fine so paid had been refunded and the receipt cancelled.
It is fundamental that upon the payment of a fine imposed in any criminal proceeding, a defendant is relieved from the imprisonment imposed in default thereof. In the instant case the fine imposed was paid in cash, officially recorded as such, and duly receipted. Relator’s contention that the return of the fine to him, with the cancellation of the receipt, rendered said payment as constituting a nonpayment in law, therefore void ab initio, is clearly unavailing to him.
LSA-R.S. 15:571.11, in so far as pertinent here, provides as follows:
“* * * All fines and forfeitures imposed in criminal cases and prosecutions by the courts of Orleans parish shall upon collection be paid into the treasury of the city of New Orleans. * * *”
Thus the money so collected had legally passed into the public fisc, and we know of no law authorizing the refunding thereof by anyone under the circumstances here presented. Consequently, at 4:20 p. m. on March 11, 1955, relator had served the mandatory sentence of imprisonment and had paid the fine imposed by Judge Cocke on March 1, 1955, which automatically dis *293 charged relator from further penalty of the sentence thus imposed. It follows that at the hour when relator appeared before the grand jury on March 11, 1955, he could properly be cited and sentenced for contempt for the separate offense as committed in the proceedings on March 11, 1955, howsoever similar the offense committed was to the one committed on March 1, 1955.
The question of whether a person may be twice sentenced for contempt in separate criminal proceedings arising out of the same circumstances has been affirmatively answered by other jurisdictions[1] as well as by us. In the case of State v. Gray, 225 La. 38, 72 So.2d 3, 6, in holding that there must be two separate and distinct contemptuous acts in order to inflict two separate punishments, we said:
“We do not wish to be understood as holding that a person who has been held guilty of and. sentenced for contempt and who serves the sentence imposed on him cannot be punished again if he afterwards repeats the offense. That he can be, we take to be the meaning of some of the language of the Court in the case of State ex rel. Schoenhausen v. King, 47 La.Ann. 701, 17 So. 288. * * *”
We now consider the third question posed, whether relator, as a witness in an investigation into the offenses of public bribery, can be compelled to testify in relation to offenses committed against the State, in spite of his assertion of the privilege against self-incrimination under the Louisiana Constitution, LSA, Art. 1, § 11.
The pertinent questions propounded to relator in the conduct of this investigation which relator refused to answer are as follows:
“Q. Mr. Dominguez, I want to state to you that the questions I am about to ask you are considered by the Grand Jury to be material to their inquiry into public bribery in this city. Have you ever had in your possession a list containing the names of police officers? A. I refuse to answer the question.
“Q. Mr. Dominguez, the Grand Jury has in its possession several apparent grocery lists running to between $25 and $50 each on which grocery list there appears the word Cap and Cap’s sister. These documents were found in your safe. Will you tell us the significance of those documents please? A. I refuse to answer.
“Q. Now, Mr. Dominguez, have you ever paid any money or thing of value to any public officer and particularly any police officer with the intent to influence his conduct in relation to his position or duty? A. I refuse to answer.
“Q. Mr. Dominguez, are any police officers or have any police officers in *295 the past ever been connected in anyway with the operation of the original Claiborne or the Original Boat Lottery Companies? A. No, sir.
"Q. Have any police officers ever received any money from you or anything of value because they did not arrest you or do anything else for you in connection with the operation of your lottery companies? A. I refuse to answer.
“Q. Have any police officers ever been in your house at 1665 N. Roman St.? A. I refuse to answer.
“Q. Now, Mr. Dominguez, I repeat to you that the Grand Jury considers the questions that they have asked you as material to their inquiry into the offense of public bribery. I further repeat to you that we are now offering you immunity and that therefore under the law, you cannot claim the privilege against self-incrimination. Do you persist in your refusal to answer? A. I do.
Upon the refusal of the relator to answer the foregoing questions, the court found him guilty of contempt of Court and sentenced him in accord with law as provided in LSA-R.S. 15:12.
The record establishes that at the time relator refused to testify in response to the above-propounded questions he was accused in eleven affidavits charging violations of LSA-R.S. 14:90, the statutory prohibition against gambling, as well as in six affidavits charging violation of LSA-R.S. 51:281, the statutory prohibition against transacting any business under an assumed name without first complying with its provisions relative to registration and licensing. Manifestly, the questions so propounded, though related to the investigation into public bribery, also related to relator’s assumed operations of a lottery business within the Parish of Orleans.
Article 1, § 11 of the LSA-Constitution of Louisiana provides that:
“No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this constitution. * *
LSA-Constitution, Article 19, § 13, provides :
“Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony.” (Italics ours.)
Statutory provisions dealing with the subject-matter of public bribery are as follows:
*297 “Any person may be compelled to testify in any lawful proceeding against another •charged with commercial bribery, public bribery, bribery of voters or corrupt influencing, and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or expose him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony.” LSA-R.S. 15:468.
“The offender, under the public bribery, bribery of voters or corrupt influencing articles, who states the facts under oath to the district attorney charged with the prosecution of the offense, and who gives evidence tending to convict any other offender under those articles, may, in the discretion of such district attorney, be granted full immunity from prosecution in- respect to the offense reported, except for perjury in giving such testimony.” LSA-R.S. 14:121.
Under Article 1, § 11, no person, can be compelled to answer any question in any criminal proceeding that may subject him to criminal prosecution, except as “otherwise provided in this Constitution.” Necessarily, where the said privilege is not available to him, as under the circumstances of this case, his refusal constitutes a criminal contempt of Court, as is defined as follows:
“A criminal contempt is conduct that is •directed against the dignity and authoritys of the court, or a judge acting judicially; it is an act obstructing the administration of justice which tends to bring the court into disrepute or disrespect.”[2]
In the instant case, had relator testified in response to the questions propounded to him in connection with the investigation of public bribery, he would have enjoyed full immunity from prosecution under State law. The constitutional provision, Art. 19, § 13, prohibits the use of such testimony against him “in any judicial proceedings, except for perjury in giving such testimony”. Accordingly, even if relator’s answers to the questions propounded had been a full confession of his gambling activities, as charged in the pending indictments brought by the State against him, the State would have been barred from using such testimony in the prosecution thereof, as well as from its use in any other judicial' proceeding. See, State v. Rodrigues, 219 La. 217, 52 So.2d 756.
We therefore conclude that relator cannot claim in this instance the constitutional privilege against self-incrimination in relation to State offenses.
We now come to consider the remaining question posed by relator, whether he, upon invoking the privilege against self-incrimination afforded by the Fifth Amendment of the Constitution of the United States, can be forced to answer the herein above-stated questions when there -is- pending. *299 against him in the Federal Court an indictment charging violations of Federal statutes as a result of alleged gambling operations.
The record discloses that in the U. S. District Court for the Eastern District of Louisiana relator is charged with the commission of a felony under the laws of the United States[3] by an indictment[4] containing twelve counts for failure to collect, account for and pay wagering excise taxes due to the U. S. Government as the owner and operator, for profit, of lottery companies.
As above observed, the questions herein propounded relate to and pointedly deal with relator’s assumed gambling activities and seek to connect him with the operation of lottery companies. Manifestly, answers thereto would lead to the discovery of evidence which may be used against relator in the prosecution of these pending Federal charges.
The general principles of law controlling as to a witness’ right to refuse to answer questions before an investigating body on the ground of self-incrimination are enunciated in the recent case of Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 818, 95 L.Ed. 1118, from which we quote:
“The Fifth Amendment declares in part that ‘No person * * * shall be compelled in any Criminal Case to be a witness against himself’. This guarantee against testimonial compulsion, like other provisions of the Bill of Rights, ‘was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed.’ Feldman v. United States, 1944, 322 U.S. 487, 489, 64 S.Ct. 1082, 1083, 88 L.Ed. 1408. This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure. Counselman v. Hitchcock, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110; Arndstein v. McCarthy, 1920, 254 U.S. 71, 72-73, 41 S.Ct. 26, 65 L.Ed. 138.
“The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (Patricia) Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223 [95 L.Ed. 170] * * *. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. *301 United States, 1951, 340 U.S. 367, 71 S.Ct. 438 [95 L.Ed. 344], and to require him to answer if ‘it clearly appears to the court that he is mistaken.’ Temple v. Commonwealth, 1881, 75 Va. 892, 899. However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim ‘must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.’ See Taft, J., in Ex parte Irvine, C.C.S.D.Ohio 1896, 74 F. 954, 960.”
We are now concerned with the right of this witness to invoke immunity against self-incrimination by his answers compelled in the State investigation in relation to the charges now pending against him in the Federal court. We question whether the protection granted by the State Constitution extends to criminal prosecutions in the Federal courts for violation of Federal statutes.
We find no Louisiana cases involving the justification of a witness invoking the privilege against self-incrimination and refusing to answer questions in a State court proceeding on the ground that his answers thereto might or will incriminate him in a Federal prosecution, notwithstanding State constitutional immunity from prosecution. However, in the case of State ex rel. Doran v. Doran, 215 La. 151, 39 So.2d 894, 897, we held that a witness was justified in invoking the privilege against self-incrimination on the ground that his answers to questions arising in habeas corpus proceedings in a Louisiana court might incriminate him in a criminal prosecution of a pending indictment returned against him in the State of California for the crime of kidnapping. We said:
“The line of authorities holding that a witness may not refuse to answer questions tending to incriminate him in a jurisdiction other than the one where the privilege is being invoked are inapplicable here because they turn on the theory that the danger of prosecution in the other jurisdiction is unlikely or remote, whereas in the instant case the danger of prosecution in California for kidnapping is not only impending but an actual fact. Doran, at the time he was testifying in this proceeding, was out of jail on bond following his arrest under an indictment returned against him in the State of California for stealing the child. See the annotations at 59 A.L.R. 895, and 82 A.L.R. 1380.”
It is readily conceivable that answers to questions put by the State in this instance *303 could incriminate relator by the use of such evidence in a prosecution under Federal law. Such a situation presented itself in the case of People v. DenUyl, 318 Mich. 645, 29 N.W.2d 284, 287, 2 A.L.R.2d 625, in which testimony was sought from a witness by a State investigating body at a time when writs of certiorari were pending in the Supreme Court of the United States relating to his conviction in a Federal prosecution of the offense of leaving the State with the intent to avoid giving testimony in a State prosecution. In upholding his right to assert his constitutional privilege against self-incrimination, the Michigan Supreme Court said:
“* * * It seems like a travesty on verity to say that one is not subjected to self-incrimination when compelled to give testimony in a State judicial proceeding which testimony may forthwith be used against him in a Federal criminal prosecution. And it is self-evident that immunity granted under a State statute would be of no avail in a Federal prosecution. * *” (Italics ours.)
Subsequently, in considering a witness’ right to assert the constitutional provision against self-incrimination, the Supreme Court of Florida adopted the principle announced in the DenUyl case, supra, and made the following observation in the case of State ex rel. Mitchell v. Kelly, Fla., 71 So.2d 887, 896:
“The result of the DenUyl case is in accord with the previous pronouncement of the Michigan court in the case of In re Watson, 293 Mich. 263, 284, 291 N.W. 652, 661. In that case the court made an extensive review of the problem and set forth .its views as follows:
“ We believe that this ancient privilege should be maintained against limitations that we conceive tend to-make it in effectual, futile, and • subversive of the spirit- and letter of the Bill of Rights.- Under-, our federal- system of government, with coextensive jurisdiction of State and national government, a person subject to the laws of a State is, at the same time, subject- to-the' laws of the federal government.’ A citizen' of a State is a citizen of-the-United-States (Fourteenth Amendment to the- United States Constitution). After a review of the authorities and'a consideration, of-the-’constitutional provisions involved, we are of the opinion that the privilege 'against- self-incrimination exonerates from disclosure whenever there is a possibility'-of prosecution in State or federal jurisdictions.
* ijs ■ * * ‡ . * ”
“ ‘To overcome the privilege,' the extent of the immunity would have to be of such a nature ' that it would protect,' not only against State prosecution, but also against any reasonably probable federal prosecution. The claim of the privilege in the face of a' State immunity statute cannot be used as ¿ ’subterfuge or pretence to refuse to answer in proceedings to detect or suppress-crime. -But neither can-the grant.'of immunity-.be used to compel answers-that *305 will lead straight to federal prosecution. Whenéver the danger of prosecution for a federal offense is substantial and imminent as a result of disclosures to bé made-under .a - grant of immunity by the State, such immunity is insufficient to overcome the privilege against self-incrimination.’
“We feel that the observations of the Michigan Court are sound. * * *”
See annotations in 82 A.L.R., p. 1380, et seq.
It must be conceded that the immunity granted by the Constitution of this -State is exclusive as to prosecutions before the courts of this State in the violation of its laws. It cannot be extended to .grant immunity to prosecution before the court of the Federal government in thé violation of its laws. Neither can the provision in the State Constitution that ihe testimony of a witness “shall not after-wards be used against him in -any judicial proceedings, * * be considered sufficient to secure the protection granted a witness under the Fifth Amendment.
In People ex rel. Morse v. Nussbaum, 1900, 55 App.Div. 245, 67 N.Y.S. 492, it was held that an’officer of a corporation could claim his privilege against self-incrimination in an examination under a New York act suppressing monopolies, though the act assumed to grant immunity to a witness for all offenses on account of any transaction concerning which he might testify, since the state- act could grant no immunity to prosecution under Federal laws and since the testimony of the witness would be likely to subject him to prosecution under existing Federal Anti-trust Laws.
In re Feldstein, D.C.1900, 103 F. 269, 271, 4 Am.Bankr.R. 321, 2 N.B.N. Rep. 982, involving the examination of a bankrupt at the instance of'the bankruptcy receiver for ascertaining whether certain checks had been given by the bankrupt for gambling debts, the court therein declared that even though there was a provision of the Bankruptcy Act that no testimony given by the bankrupt “ ‘shall be offered in evidence against him in any criminal ’ proceeding’ ”, 11 U.S.C.A. § 25, sub. a(10), it was not sufficient to secure the .protection granted the witness under .the Fifth Amendment.
We feel that the observations of the courts in the two instances cited are sound, and they meet with our approval.
We are impelled to conclude, as have other jurisdictions, that a person may re^ fuse to divulge information or to testify under the constitutional privilege granted him by the Fifth Amendment on the ground that his disclosures would subject him to the danger of prosecution in a Federal court, or be used in the proof of charges pending before the Federal jurisdiction. However, we concede, as other jurisdictions have, that the important question to be resolved in granting the immunity is the danger of prosecution in the other jurisdictions. Where it appears that the *307 danger is remote or unlikely, the privilege against self-incrimination should not be extended. Nevertheless, where the danger is imminent, such as in cases which involve then pending charges awaiting prosecution, the privilege of immunity should be extended to a witness. State ex rel. Doran v. Doran, supra.
As previously observed, there were twelve counts in one indictment returned by the grand jury to the Federal District Court for the Eastern District of Louisiana then awaiting trial against relator. Therefore, to have required him to answer the above-stated questions relative to his gambling activities would have been to compel him to give testimony which could be available to the prosecutor and used against relator in the criminal charges then pending before the Federal court, in violation of his constitutional right against self-incrimination, the protection of which is guaranteed by the Fifth Amendment of the Constitution of the United States as herein invoked.
For the reasons assigned the conviction herein is set aside and the defendant is discharged.

. 17 C.J.S., Contempt, § 100, p. 144.

. 17 C.J.S., Contempt, § 5, p. 7.

. 26 U.S.C.A. §§ 3285, 3287; 26 U.S.C.A. § 2707.

. No. 24,995 of the Docket of the U. S. District Court for the Eastern District of Louisiana.