99 So.2d 320 (1957)
233 La. 992
STATE of Louisiana
v.
Thomas J. FORD, Edward H. Fallon, and Vladimir Slicho.
No. 43658.
Supreme Court of Louisiana.
November 12, 1957.
Rehearing Denied January 9, 1958.
Clem H. Sehrt, Edward J. Boyle, Virgil M. Wheeler, Jr., New Orleans, for relators.
Jack P. F. Gremillion, Atty. Gen., Michael E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Louis F. Claiborne, Asst. Dist. Atty., New Orleans, for respondent.
*321 MOISE, Justice.
On July 10, 1957, the Honorable Frank T. Echezabal, Judge of the Criminal District Court for the Parish of Orleans, held the relators, Thomas J. Ford, Edward H. Fallon, and Vladimir Slicho, in contempt of the Grand Jury for the Parish of Orleans, State of Louisiana, and of the Criminal District Court for the Parish of Orleans, and sentenced them to serve ten days in the parish jail and to pay a fine of $100 each, in default of the payment thereof to serve an additional term of two months in the parish prison. Remedial writs were granted by this Court. Article VII, sec. 10, LSA-Constitution of 1921.
The alleged contempt was the refusal of relators, who were granted immunity under Article XIX, sec. 13, Louisiana Constitution of 1921,[1] to answer the following questions propounded by the Grand Jury for the Parish of Orleans at a hearing held on June 21, 1957:
Ford
"1. Have you, yourself, ever participated in any public bribery or graft system while a police officer on the New Orleans Police Force?
"2. Now, specifically, have you ever engaged in picking up money or other things of value from the operators of illegal businesses such as lottery, prostitution, handbooks and so forth?
"3. Have you, yourself, ever received any money from lottery shops, prostitution, handbooks and other illegal sources?
"4. Have you ever observed anyone else who accepted money from illegal sources such as lottery houses, houses of prostitution, handbooks and so forth?
"5. Do you have any personal knowledge, whatever, of any graft system that operated in the Police Department of the City of New Orleans?"
Fallon
"1. Have you ever participated in any public bribery or graft in the City of New Orleans when you were on the police force of the City of New Orleans?
"2. Have you ever received any funds, money or any other things of value from any lottery company, house of prostitution, handbook or any other similar illegal business?
"3. Have you ever picked up any money from such illegal business as described in the last question, for distribution to other members of the New Orleans Police Force?
"4. Have you ever observed any other member of the police force accepting such illegal funds or engaging in such public bribery?
"5. Do you have any evidence whatever of any nature which would indicate that any of your fellow officers on the New Orleans Police Force are guilty of public bribery or graft?"
Slicho
"1. Have you ever participated in any public bribery?
"2. Have you ever received any money, funds or other things of value from illegal sources such as lottery houses, houses of prostitution, handbooks or other forms of gambling?

*322 "3. Have you ever picked up any funds or things of value from any such illegal sources for distribution to other members of the Police Force?
"4. Have you ever observed any other member of the Police Force beside yourself participating in a public bribery system involving funds from lotteries, houses of prostitution, handbooks or other forms of illegal gambling?
"5. Do you have any evidence which has come to your knowledge of the existence of such a system of public bribery and graft on the New Orleans Police Department?"
Defendants invoked the Fifth Amendment to the Federal Constitution.[2] Their refusal to answer the above questions was based on the grounds that they might incriminate themselves and feared prosecution under Federal Income Tax Laws and other federal laws.
The State and the defendants accept as true, the following facts:
(1) That the Intelligence Division, Internal Revenue Service of the United States, the United States Attorney for the Eastern District of Louisiana and the United States Grand Jury (acting under the supervision of the Honorable J. Skelly Wright, Judge of the United States District Court in and for the Eastern District of Louisiana) have been for several months and are presently engaged in investigating some of the members of the New Orleans Police Department for income tax evasion, a felony under the laws of the United States.
(2) That defendants in rule were members of the New Orleans Police Department for many years prior to the filing of this proceeding.
(3) That defendants have been summoned before the Intelligence Division, Internal Revenue Service at New Orleans, in connection with the aforesaid investigation of the income tax returns of some of the members of the New Orleans Police Department for the years 1950 to 1955, inclusive, but were advised that at that time they were not themselves under investigation.
(4) That defendants Slicho and Ford have been subpoenaed and appeared before the United States Grand Jury in connection with the aforesaid investigation.
(5) That defendant Ford was called before the Court for contempt in the United States District Court for the Eastern District of Louisiana in connection with his refusal to answer questions on the grounds of self-incrimination, before said Grand Jury and said Judge J. Skelly Wright, on June 19, 1957, dismissed the proceeding and maintained the right of the defendant Ford to refuse to answer questions on the grounds of self-incrimination.
(6) That publicity through daily newspapers, television and radio has been carried on for several months regarding the investigation embarked upon by the Federal authorities into the income tax returns of some of the members of the New Orleans Police Department for the years 1950 to 1955, inclusive.
(7) That eleven indictments have been returned by the United States Grand Jury against members of the New Orleans Police Department in connection with the aforementioned investigation; three for income tax evasion and eight for perjury or false statements.
(8) That defendants Ford and Slicho are police officers who have voluntarily retired from the New Orleans Police Department, respectively on June 21 and June 24, 1957. That the defendant Fallon has been dismissed from the New Orleans Police Department, following the initiation of these proceedings.
*323 (9) That defendants are not at this time under any indictments under the laws of the United States.
(10) That the following questions were propounded to defendants by the Federal authorities in connection with the aforesaid investigation after they had been advised that it was not contemplated that a case would be made against them personally at that time:
"Q. Have you, during the years 1950 through 1955, inclusive, collected or received any money from owners of handbooks, operators of card games, individually engaged in lottery activities, prostitutes or operators of bars?
"Q. Have you, during this period of 1950 through 1955 collected or received any money or other things of value from anyone in return for protection to individuals engaged in illegal activities?
"Q. Have you, during this period of 1950 through 1955, collected or received any money from other members of the police department or anyone representing a distribution of money collected from individuals engaged in illegal activities?
"Q. Have you ever, in any manner, assisted in the collection, receipt or distribution of payoff money?
"Q. Have you ever witnessed the collection, receipt or distribution of payoff money by fellow members of the police department?
"Q. Do you have any personal knowledge of a system of graft existing in the New Orleans police department during the years 1950 through 1955?
(11) That the exhibits attached to rule filed against defendants and marked "A", "B", and "C" are correct transcriptions of what occurred before the Orleans Parish Grand Jury on June 21, 1957.
During the course of the hearing, three bills of exceptions were reserved to the rulings of the trial judge.
Bill of Exceptions No. One was reserved to the trial court's overruling the defendants' objections to the proceedings. It was contended that such proceedings were illegal, unauthorized, null and void, and a violation of the constitutional privilege against self-incrimination extended to citizens of the State of Louisiana and the United States under the Constitution and laws of said sovereigns. Defendants averred that:
"The defendants herein did claim, before the Orleans Parish Grand Jury their constitutional privilege against self-incrimination on the ground that their answers would be incriminating or tend to be incriminating. We point out to Your Honor that neither the United States Grand Jury, the United States Attorney, not even the Attorney General of the United States can grant immunity under the income tax laws of the United States and certainly it is conceded that the Orleans Parish Grand Jury and our District Attorney have no such power or authority. We further point out to Your Honor that these defendants have been summoned before the duly constituted Federal authorities in connection with the widely publicized investigation embarked upon by the United States Attorney and the United States Grand Jury regarding income tax evasion relative to all members of the New Orleans Police Department. * * * these defendants, under the circumstances, fearing Federal prosecution which could be initiated against them under several federal laws, many of which are felonies and particularly the income tax laws, have a right and are entitled to invoke their privilege against self-incrimination. For reasons stated we object, except to and contend that these proceedings should *324 be declared null and void and prosecution declined."
Bill of Exceptions No. Two was reserved to the trial court's sustaining the instant motion for contempt and averred the same contentions as those set out in Bill of Exceptions No. One. In his per curiam to this bill, the trial judge stated:
"This court does not, and never has held, that immunity granted from state prosecution has the effect of granting immunity from prosecution for violations of Federal Laws. There are no investigations pending or criminal charges filed against the accused in the Federal Court."
Bills No. One and No. Two can be taken together for the presentation of this review.
Relators argue that the Fifth and Fourteenth Amendments[3] to the Constitution of the United States extend to a witness the right to refuse to give testimony before a State Grand Jury on the ground of self-incrimination when such testimony could or would furnish evidence either to establish a Federal crime committed by the witness and form the basis for a Federal prosecution, or would furnish a link in the chain of evidence necessary to prosecute a Federal offense committed by the witness.
From the bills of exceptions, the defendants are claiming the benefits of both the State and Federal Constitution in regard to self-incrimination, and urging that they should not be held in contempt for their refusal to testify before the Grand Jury for the Parish of Orleans. They contend that despite immunity from State prosecution granted them, they may claim their alleged constitutional privileges against self-incrimination under Article I, sec. 11,[4] Louisiana Constitution of 1921, and under the Constitution and laws of the United States. They rely on the case of State v. Dominguez, 228 La. 284, 82 So.2d 12, and other authorities.
The State contends that the defendants are fully protected against any State action which might be preferred against them, and that they had no grounds on which to refuse to testify with respect to an offense against the State. With respect to the Dominguez case, supra, the prosecution declares that the Dominguez case should be overruled or that the Dominguez case is distinguishable.
In the Dominguez case, the defendant was adjudged guilty of contempt of the Criminal District Court for the Parish of Orleans for refusal to answer certain questions with respect to alleged bribery of the New Orleans Police Force propounded to him by the Grand Jury for the Parish of Orleans. In reversing that ruling, this Court said [228 La. 284, 82 So.2d 20]:
"We are impelled to conclude, as have other jurisdictions, that a person may refuse to divulge information or to testify under the constitutional privilege granted him by the Fifth Amendment on the ground that his disclosures would subject him to the danger of prosecution in a Federal court, or be used in the proof of charges pending before the Federal jurisdiction. However, we concede, as other jurisdictions have, that the important question to be resolved in granting the immunity is the danger of prosecution in the other jurisdictions. *325 Where it appears that the danger is remote or unlikely, the privilege against self-incrimination should not be extended. Nevertheless, where the danger is imminent, such as the cases which involve then pending charges awaiting prosecution, the privilege of immunity should be extended to a witness. State ex rel. Doran v. Doran, supra, [215 La. 151, 39 So.2d 894, 897]."
These defendants were not indicted nor charged by the Federal authorities, while in the Dominguez case, supra, not only was the defendant charged, but there were twelve counts in one indictment preferred against him and returned by the Grand Jury to the Federal District Court for the Eastern District of Louisiana. In setting aside that conviction, this Court stated:
"* * * there were twelve counts in one indictment returned by the grand jury to the Federal District Court for the Eastern District of Louisiana then awaiting trial against relator. Therefore, to have required him to answer the above-stated questions relative to his gambling activities would have been to compel him to give testimony which could be available to the prosecutor and used against relator in the criminal charges then pending before the Federal court, in violation of his constitutional right against self-incrimination, the protection of which is guaranteed by the Fifth Amendment of the Constitution of the United States as herein invoked."
This important distinction illustrates the necessity of holding the Dominguez case to its own facts, and that is, where the accused is actually under Federal indictment.
We must note that we have two sovereignties in AmericaFederal and State. The Federal Constitution is one of enumerated powers. The defendants having invoked the Fifth and Fourteenth Amendments to the Federal Constitution, we feel compelled to make certain distinctions. The Fifth Amendment to the Federal Constitution was enacted to protect the man against the Nation, and the Fourteenth Amendment was to shield him from the tyranny of the State. The Tenth Amendment was to prohibit the National Government from exercising any powers not delegated by the Constitution. It further provided that all powers not so specifically delegated are to be exercised by the State.
The United States Supreme Court in the case of Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 1675, 91 L.Ed. 1903, held that the Federal protection of the Fourteenth Amendment did not extend to pleas of self-incrimination in State trials. It stated:
"* * * With the adoption of the Fourteenth Amendment, it was suggested that the dual citizenship recognized by its first sentence,[5] secured for citizens federal protection for their elemental privileges and immunities of state citizenship. The Slaughter-House Cases, 16 Wall. 36, 21 L.Ed. 394, decided, contrary to the suggestion, that these rights, as privileges and immunities of state citizenship, remained under the sole protection of the state governments. This Court, without the expression of a contrary view upon that phase of the issues before the Court, has approved this determination. Maxwell v. Bugbee, 250 U.S. 525, 537, 40 S.Ct. 2, 5, 63 L.Ed. 1124; Hamilton v. Regents, 293 U.S. 245, 261, 55 S.Ct. 197, 203, 79 L.Ed. 343. The power to free defendants in state trials from self-incrimination was specifically determined to be beyond the scope of the privileges and immunities clause of *326 the Fourteenth Amendment in Twining v. State of New Jersey, 211 U.S. 78, 91-98, 29 S.Ct. 14, 16-19, 53 L.Ed. 97. `The privilege against self-incrimination may be withdrawn and the accused put upon the stand as a witness for the state.' The Twining case likewise disposed of the contention that freedom from testimonial compulsion, being specifically granted by the Bill of Rights, is a federal privilege, or immunity that is protected by the Fourteenth Amendment against state invasion. This Court held that the inclusion in the Bill of Rights of this protection against the power of the national government did not make the privilege a federal privilege or immunity secured to citizens by the Constitution against state action. Twining v. State of New Jersey, supra, 211 U.S. at pages 98, 99, 29 S.Ct. at page 19, 53 L.Ed. 97; Palko v. State of Connecticut, supra, 302 U.S. [319] at page 328, 58 S.Ct. [149] at page 153, 82 L.Ed. 288. After declaring that state and national citizenship co-exist in the same person, the Fourteenth Amendment forbids a state from abridging the privileges and immunities of citizens of the United States. As a matter of words, this leaves a state free to abridge, within the limits of the due process clause, the privileges and immunities flowing from state citizenship. This reading of the Federal Constitution has heretofore found favor with the majority of this Court as a natural and logical interpretation. It accords with the constitutional doctrine of federalism by leaving to the states the responsibility of dealing with the privileges and immunities of their citizens except those inherent in national citizenship. It is the construction placed upon the amendment by justices whose own experience had given them contemporaneous knowledge of the purposes that led to the adoption of the Fourteenth Amendment. This construction has become embedded in our right to a `speedy trial' as such to persons tried in state courts. The Constitutional right to a `speedy trial' is federal system as a functioning element in preserving the balance between national and state power. We reaffirm the conclusion of the Twining and Palko cases that protection against self-incrimination is not a privilege or immunity of national citizenship." (Italics ours.)
In the case of In re Sawyer (Sawyer v Barczak), 229 F.2d 805, 811, certiorari denied 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486; Id., 77 S.Ct. 24, 352 U.S. 860, 1 L.Ed.2d 70, the United States Court of Appeals Seventh Circuit, stated:
"* * * It is clear that the Federal Constitution does not give an absolute contained in the Sixth Amendment. It is common knowledge that the first ten amendments do not apply to state tribunals and that the Fourteenth Amendment, which does apply to the states, does not necessarily include all of the first ten. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903." (Italics ours.)
In Breithaupt v. Abram, 77 S.Ct. 408, 409, 352 U.S. 432, 1 L.Ed.2d 448, it was reiterated that:
"* * * Petitioner relies on the proposition that `the generative principles' of the Bill of Rights should extend the protections of the Fourth and Fifth Amendments to his case through the Due Process Clause of the Fourteenth Amendment. But Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, answers this contention in the negative. See also Twining v. State of New Jersey, 1908, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97; Palko v. State of Connecticut, 1937, 302 U.S. 319, 58 *327 S.Ct. 149, 82 L.Ed. 288; Irvine v. People of State of California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561. * * *"
Under the above rulings of the United States Supreme Court defendants are clearly in error in their contention that the "Due Process" Clause of the Fourteenth Amendment extends its provisions to the Fifth Amendment invoked in a state court.
Article I, sec. II, Louisiana Constitution of 1921, supra, which protects a defendant from being compelled to give evidence against himself in a criminal case also contains an exception. It is provided therein that the rule applies "except as otherwise provided in this Constitution." Article XIX, sec. 13, Louisiana Constitution of 1921, supra, is the exception. Defendants, therefore are provided no relief under the State Constitution of Louisiana of 1921. See, 16 La.Law Review p. 434.
The defendants have been granted immunity under Article XIX, sec. 13, Louisiana Constitution of 1921. There are no pending charges, nor even a probability that the evidence sought to be elicited will be used against them. If, by suspicion, accident, or design, the authorities of the National Government and the authorities of the State Government are investigating probable public bribery relating to the Police Department of the City of New Orleans, a defendant who is being prosecuted in the Federal Court can plead therein the Fifth Amendment to the Federal Constitution. Even in the instant matter, the defendant Ford was granted immunity by Federal Judge Skelly Wright from answering certain questions propounded to him by the Federal Grand Jury.
We conclude that the Fifth Amendment to the Federal Constitution cannot be invoked in the present State prosecution.[6] We reiterate that the Constitution of the United States is an instrument which extends its authority over the whole territory of the Union, acting under all of the people of the States in the enumerated powers therein mentioned. The sovereignty of the State of Louisiana extends only to that which exists by its own authority. It is a matter of common sense that the American citizen owes allegiance to two sovereignties and can claim protection from both within their respective spheres. Likewise, he must pay the penalty that each exacts for disobedience to its constitution.
The facts herein presented are not identical to those of the Dominguez case, supra. That prosecution is, therefore, sui generis, and not applicable to the instant matter.
Bill of Exceptions No. Three was reserved to the trial judge's overruling of defendants' motion for a new trial. It was alleged that the judgment of the court was contrary to the law and the evidence. Nothing new was presented in this bill, and it will not be considered on this review. State v. D'Ingianni, 217 La. 945, 47 So.2d 731; State v. Mills, 229 La. 758, 86 So.2d 895.
For the reasons assigned, it is ordered that the writs and stay order issued herein be and they are hereby recalled and set aside. The judgment and sentence of the trial court are affirmed.
McCALEB, Justice (concurring).
I am in agreement with the result in this case and the excellent reasoning supporting it, which is directly contrary to the views expressed in State v. Dominguez, 228 La. 284, 82 So.2d 12. Despite the refusal of the Court to specifically overrule the Dominguez case (which I believe to be in order), that decision has apparently been relegated to a sort of judicial limbo from which there is little hope of return, save under the identical facts appearing therein.
NOTES
[1] "Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony."
[2] "No person * * * shall be compelled in any criminal case to be a witness against himself, * * *"
[3] Amendment No. 14, United States Constitution: "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
[4] "No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. * * *"
[5] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. * * *"
[6] Jack v. State of Kansas, 199 U.S. 372, 26 S.Ct. 73, 50 L.Ed. 234; 28 Tulane Law Review 1.