STATE EX REL. JACKSON, Appellant, v. COFFEY, Respondent.
STATE EX REL. SMITH, Appellant, v. SAME, Respondent.

*November 30, 1962—January 8, 1963.*

For the appellants there was a brief and oral argument by *Dominic H. Frinzi* and *Nicholas C. Catania,* both of Milwaukee.

For the respondent the cause was submitted on the brief of *John W. Reynolds,* attorney general, and *William A. Platz,* assistant attorney general.

FAIRCHILD, J. Petitioners assert several grounds for challenging Judge COFFEY's authority to commit them to jail

in order to compel them to answer questions. It will be seen that our conclusion on the first ground requires that the writ of prohibition restraining Judge COFFEY from compelling petitioners' testimony under sec. 325.34, Stats. (the immunity statute) be made absolute. The parties have, however, briefed and argued the other grounds, and it is reasonable to expect that if these questions are not now disposed of they will be raised repeatedly in the John Doe proceeding out of which these petitions stem. We therefore consider and decide all the grounds which have been argued to the extent that they are squarely presented by the record before us.

1. *A circuit judge or other magistrate conducting a John Doe proceeding does not have power to compel self-incriminating testimony and thereby grant immunity under sec. 325.34, Stats.* Sec. 325.34, Stats.,[1] employs the immunity technique to offset the privilege against self-incrimination. If a witness refuses to testify or produce evidence upon a valid claim that the testimony or evidence would incriminate him, this statute authorizes compelling the witness to testify or produce evidence nevertheless, and the statute grants the witness immunity from liability to forfeiture or penalty on account of any transaction concerning which he may testify or give evidence as a result of such compulsion. By virtue of the immunity conferred upon him, the testimony or evidence can no longer incriminate him, and thus the compulsion

[1] "Whenever any person shall refuse to testify or to produce books, papers, or documents when required to do so in any criminal examination, hearing, or prosecution for the reason that the testimony or evidence required of him may tend to criminate him or subject him to a forfeiture or penalty, he may nevertheless be compelled to testify or produce such evidence by order of the court on motion of the district attorney. But no person who testifies or produces evidence in obedience to the command of the court in such case shall be liable to any forfeiture or penalty for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence; but no person shall be exempted from prosecution and punishment for perjury committed in so testifying."

does not violate the constitutional privilege against self-incrimination.[2]

Sec. 325.34, Stats., applies whenever a person is required to give evidence "in any criminal examination, hearing, or prosecution." The quoted language is not limited to testimony or evidence required in the course of trial of a criminal action, or of some other hearing in the presence of a court. It is broad enough to cover a John Doe examination such as we have here. It is broad enough to cover, as well, a preliminary examination under sec. 954.08 and an inquiry by a grand jury.

The section says, however, that the compulsion is to be "by order of the court" and the testimony which determines the scope of the immunity is that which is given "in obedience to the command of the court."

Where a trial or other hearing in a criminal action is in progress before a court, that court has the power to compel testimony, conferred by sec. 325.34, Stats. A grand jury performs its work under the supervision of a court,[3] and it must be that court upon which sec. 325.34 confers the power to compel testimony before a grand jury.

The problem in these cases arises because a John Doe examination is not conducted by, nor under the supervision of any court. It is true that Judge COFFEY is a circuit judge and, as such, has power to preside over a branch of the circuit court. But a John Doe proceeding is conducted by a magistrate,[4] who may be a court commissioner or justice of the peace as well as a judge of a court of record.[5]

The law ordinarily makes a clear distinction between a magistrate and a court. The distinction exists even where

---

[2] "No person . . . shall be compelled in any criminal case to be a witness against himself." Sec. 8, art. I, Wis. Const.

[3] Report of Grand Jury (1931), 204 Wis. 409, 412, 235 N. W. 789.

[4] Sec. 954.025, Stats.

[5] Sec. 954.01, Stats.

the person who acts in the capacity of magistrate is also the judge of a court of record.[6] Petitioners rely on this distinction and suggest that since there is no court in a John Doe proceeding to compel testimony, sec. 325.34, Stats., cannot apply to it. The attorney general argues that since a John Doe examination is a "criminal examination" the legislature intended sec. 325.34 to apply, and in order to give effect to that intent, we must construe "the court" to include "the magistrate."

Petitioners, it seems to us, would unduly restrict the general terms "any criminal examination, hearing, or prosecution" in order to give an exact meaning to the term "the court" and respondent would unduly expand the meaning of "the court" in order to give full meaning to "any criminal examination, hearing, or prosecution."

It is doubtless important to the state to have the immunity technique available in a John Doe proceeding. Yet the public interest can be jeopardized by an unwise use of the statutory power.[7]

Although the witness has no legal complaint against being compelled to testify when his testimony immunizes him, there are unpleasant consequences from which he cannot be immunized, *i.e.*, stating facts which degrade him, or facts which may subject him to prosecution by the United States

---

[6] *State v. Friedl* (1951), 259 Wis. 110, 47 N. W. (2d) 306; *State ex rel. White v. District Court* (1952), 262 Wis. 139, 54 N. W. (2d) 189. For a similar distinction between action as a court, and action by a judge in an administrative capacity, see cases referred to in *Blado v. Knoll* (1958), 4 Wis. (2d) 184, 90 N. W. (2d) 176.

[7] Under one of the early federal immunity statutes certain persons gained immunity from prosecution for embezzlement of two million dollars' worth of Indian trust bonds from the Department of Interior. Dixon, The Fifth Amendment and Federal Immunity Statutes, 22 George Washington Law Review (1954), 447, 453.

or another state. The witness has an interest in a record which will establish with certainty the fact that he has gained immunity.

If the legislature used the word "court" advisedly, we see no reason why the statute could not be made to operate in a John Doe proceeding (or in a preliminary examination) by an application to a court for an order compelling testimony notwithstanding the assertion of the privilege against self-incrimination, the procedure being similar to that which would be employed if the refusal occurred before a grand jury.

We conclude that the term "the court" in this statute is to be given its proper and ordinary meaning, and not stretched to cover magistrates. Although in the instant cases, the magistrate is a judge of a court of record, this need not be so in every case. Furthermore, certain procedural formalities are woven into action by a court, and these tend to insure the considered and responsible exercise of an important power. Although the sitting of the court for this purpose need not be public,[8] the judge is attended by court officials, the parties and their counsel while court is in session,[9] minutes are to be kept by the clerk,[10] and final orders are to be recorded.[11]

We conclude that sec. 325.34, Stats., applies to a witness in a John Doe proceeding, but that the power in such case is to be exercised by a court. So construed, the statute remains ambiguous as to the identity of the court which has power to act. We deem the most-reasonable construction to be that the power is vested in any court of record of the county. This interpretation, it seems to us, does less violence

[8] Sec. 256.14, Stats.
[9] *Pasternak v. Pasternak* (1961), 14 Wis. (2d) 38, 43, 109 N. W. (2d) 511.
[10] Sec. 59.39 (4), Stats.
[11] Sec. 270.71 (2), Stats.

to the words of the statute, in the light of its purpose, than the interpretation contended for by either party.

The attorney general has relied upon a statement appearing in *State ex rel. Kowaleski v. District Court* [12] as follows:

"As to whether the magistrate under sec. 361.02, Stats., can permit the district attorney collaborating in the investigation to promise immunity to witnesses as an inducement to their testifying, this is improper and has no legal basis. However, the district attorney on his oral argument denied making such statements and denied that he had offered immunity to any witness. He properly stated that immunity can be granted only by the examining magistrate and then only within the discretion of said magistrate. We find no evidence of any abuse of this discretion."

There seems to have been no printed brief on behalf of appellant in that case. From the brief of respondent, and the briefs of both parties on motion for rehearing, as well as the statement just quoted from the opinion, it appears that the contest was whether the district attorney had promised immunity and, if so, what effect such promises had on the John Doe proceeding. The parties assumed the magistrate could grant immunity, and did not brief the point. Insofar as the quoted language upholds the power of the magistrate to compel testimony under sec. 325.34, Stats., it is withdrawn.

Our opinion is that Judge COFFEY, acting as magistrate, had no power to compel testimony under sec. 325.34, Stats., and should be restrained from attempting to enforce against petitioners any order he made in reliance on that section. To that extent the alternative writ of prohibition should be made absolute.

2. *The motion to compel testimony under sec. 325.34, Stats., may be made in these matters by the attorney general or his assistant.* The parties stipulated that the governor

---

[12] (1949), 254 Wis. 363, 371, 36 N. W. (2d) 419.

had written a letter to the attorney general stating that it constituted authority to appear for the state and prosecute the John Doe proceeding pending before Judge COFFEY as magistrate. The letter also requested the attorney general to supervise the prosecution of any cases where criminal warrants may be issued as a result of the proceeding.

Sec. 325.34, Stats., requires that the order of the court compelling testimony be made "on motion of the district attorney." Petitioners contend that the motion of the assistant attorney general is insufficient.

The purpose of requiring the order to be made on motion of the district attorney is to make certain that the state's interest in possible prosecution of the witness be protected. If immunity is to be granted to one of several offenders in order to obtain conviction of the others, the state is interested in the selection of the offender to be immunized. The state is interested also that immunity not be granted if sufficient evidence is otherwise available. Ordinarily it is the duty of the district attorney to prosecute all criminal actions in the courts of his county.[13] On the other hand, no statute gives the attorney general power to appear and prosecute criminal actions generally except in the supreme court, and in this state the attorney general has no common-law powers or duties.[14]

Sec. 14.53 (1), Stats., however, requires that the attorney general shall "when requested by the governor or either branch of the legislature, appear for the state and prosecute . . . in any court or before any officer, any cause or matter, civil or criminal, in which the state or the people thereof may be in anywise interested."

Sec. 14.53 (1), Stats., empowers the governor to require the attorney general to prosecute on behalf of the state matters which it would otherwise be the duty of the district attorney to prosecute on behalf of the state. We think it

[13] Sec. 59.47, Stats.
[14] *State v. Snyder* (1920), 172 Wis. 415, 417, 179 N. W. 579.

reasonably follows that the attorney general has the powers of the district attorney of the county or counties involved while acting within the scope of the governor's request. This proposition is expressed in sec. 14.531, as follows:

". . . In any criminal action prosecuted by the attorney general, he and the deputy and assistant attorney general shall have the same powers with reference to such action as are vested in district attorneys."

The power to prosecute must involve the power to prepare the case and take the preliminary steps as well as to appear in the action after it has been commenced. We think that sec. 14.53 (1), Stats., contemplates that the attorney general shall have such power, and the sentence just quoted from sec. 14.531 should be read in the same light.

"Where authority is conferred upon the attorney general to prosecute criminal proceedings, he possesses all the powers of a prosecuting attorney, . . .
"Where the authority of the attorney general and the district attorney is concurrent, their action should be co-ordinated, and, in the event of a conflict between them, the attorney general, being the superior officer, has control." [15]

We conclude that in view of the governor's request, the attorney general or his assistant could properly make the motion for compulsion of testimony under sec. 325.34, Stats.

3. *The fact that an answer would tend to prove the witness guilty of a federal offense does not justify his refusal to answer in a state proceeding.* Petitioners correctly assert that the Wisconsin statute, sec. 325.34, cannot immunize a witness from conviction in a court of the United States of federal offenses which his testimony may disclose.[16] They argue that sec. 8, art. I of the Wisconsin constitution, that no one shall be compelled in any criminal case to be a witness

[15] 5 Am. Jur., Attorney General, p. 253, sec. 21.
[16] *Jack v. Kansas* (1905), 199 U. S. 372, 380, 26 Sup. Ct. 73, 50 L. Ed. 234.

against himself, prohibits the state from compelling testimony which would tend to prove that the witness committed a federal offense. They say that a witness may properly refuse if the answer would incriminate him under federal law even though the witness be granted immunity from punishment under state law. (Logically, their argument should be the same even though the answer would not in any event tend to prove an offense under state law.)

Petitioners do not contend that the constitution of the United States prevents a state from compelling an answer which would incriminate the witness under federal law. Indeed, the Fourteenth amendment does not compel the states to recognize the privilege against self-incrimination at all.[17] And the Fifth amendment does not prohibit the states from compelling witnesses to give testimony which would prove they committed federal offenses.[18] Petitioners rely wholly on the constitution of Wisconsin and urge that we construe it in accordance with their contention.

We find no Wisconsin decision on this point. The greater weight of authority appears to view the privilege against self-incrimination solely in terms of the relationship between the individual and the government (sovereign) which is exercising its power to compel his testimony. That government cannot use its power to put him under oath and require him to testify in such manner as to subject him to punishment by that government for offenses against it. But this restriction on the government does not prevent it from requiring a witness to testify to facts which happen to show him guilty of an offense against a different government.

The supreme court of the United States has said:

[17] *Twining v. New Jersey* (1908), 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97; *Palko v. Connecticut* (1937), 302 U. S. 319, 325, 326, 58 Sup. Ct. 149, 82 L. Ed. 288; *Adamson v. California* (1947), 332 U. S. 46, 67 Sup. Ct. 1672, 91 L. Ed. 1903.

[18] *Knapp v. Schweitzer* (1958), 357 U. S. 371, 78 Sup. Ct. 1302, 2 L. Ed. (2d) 1393; *Mills v. Louisiana* (1959), 360 U. S. 230, 79 Sup. Ct. 980, 3 L. Ed. (2d) 1193.

"The English rule of evidence against compulsory self-incrimination, on which historically that contained in the Fifth amendment rests, does not protect witnesses against disclosing offenses in violation of the laws of another country. *Two Sicilies v. Willcox,* 7 State Tr. N. S. 1050, 1068; *Reg. v. Boyes,* 1 Best. & S. 311, 330, 121 Eng. Reprint, 730. This court has held that immunity against state prosecution is not essential to the validity of federal statutes declaring that a witness shall not be excused from giving evidence on the ground that it will incriminate him, and also that the lack of state power to give witnesses protection against federal prosecution does not defeat a state immunity statute. The principle established is that full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the rule against compulsory self-incrimination." [19]

In answer to a claim that the provision against compulsory self-incrimination in the Fifth amendment to the United States constitution prevented the state from compelling a witness to incriminate himself under a federal statute, Mr. Justice FRANKFURTER, speaking for the court, said:

"The sole—although deeply valuable—purpose of the Fifth amendment privilege against self-incrimination is the security of the individual against the exertion of the power of the federal government to compel incriminating testimony with a view to enabling that same government to convict a man out of his own mouth." [20]

Language in several earlier decisions of the supreme court of the United States indicated that the court considered prosecution by the government which was not compelling the testimony as a remote possibility, and thus suggested that perhaps a question of degree might be involved; that one government (state or federal) need not exempt a witness from giving testimony tending to show him guilty of an of-

[19] *United States v. Murdock* (1931), 284 U. S. 141, 149, 52 Sup. Ct. 63, 76 L. Ed. 210, 213. For other cases see 58 Am. Jur., Witnesses, p. 53, sec. 51; Annos. 59 A. L. R. 895, 82 A. L. R. 1380.
[20] *Knapp v. Schweitzer, supra,* p. 380, footnote 18.

fense against the law of the other as long as prosecution was a remote possibility, but must exempt the witness where prosecution by the other government was imminent.[21] The more-recent decisions seem to recognize no exception based on a high probability of prosecution by the other government.

The highest courts of several states have taken the position that where a prosecution of the witness for the federal offense has already been instituted or is highly probable, the state constitutional privilege against self-incrimination prohibits the state from requiring testimony which would tend to prove the witness guilty of the federal offense. In Michigan the test appears to be, "Whenever the danger of prosecution for a federal offense is substantial and imminent as a result of disclosures to be made under a grant of immunity by the state." [22] In Kentucky the test is, "Whenever there is a probability of prosecution;" [23] in Florida, when the answer would place the witness "in a situation of substantial and imminent danger of federal prosecution." [24] In Louisiana such witness is excused from giving testimony incriminating himself under federal law only where the witness is actually under federal indictment.[25] It does not appear that any state protects a witness as fully against self-incrimination under federal law as it does against self-

[21] *United States v. Saline Bank of Virginia* (1828), 26 U. S. (1 Pet.) 100, 7 L. Ed. 69; *Brown v. Walker* (1896), 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819; *Jack v. Kansas, supra,* footnote 16; *Ballmann v. Fagin* (1906), 200 U. S. 186, 195, 26 Sup. Ct. 212, 50 L. Ed. 433.

[22] *In re Watson* (1940), 293 Mich. 263, 285, 291 N. W. 652, 661. See also *People v. DenUyl* (1947), 318 Mich. 645, 29 N. W. (2d) 284, where a federal prosecution of the witness was pending at the time of the state examination.

[23] *Commonwealth v. Rhine* (Ky. 1957), 303 S. W. (2d) 301, 304.

[24] *State ex rel. Mitchell v. Kelly* (Fla. 1954), 71 So. (2d) 887, 897.

[25] *State v. Dominquez* (1955), 228 La. 284, 82 So. (2d) 12, as qualified by *State v. Ford* (1957), 233 La. 992, 99 So. (2d) 320.

incrimination under state law. In Illinois, however, the state immunity statute provides that testimony is not to be compelled and immunity granted if it shall reasonably appear that the testimony or evidence would subject the witness to prosecution under the laws of another state or of the United States.[26]

We adhere to the majority view that the privilege against self-incrimination was intended to deal only with the relationship between the government compelling the testimony and the witness and therefore conclude that the assertion by the witness of a claim that the answer to a question would tend to prove him guilty of a federal offense is not a sufficient basis for refusal to testify in an examination conducted by the laws of the state. Petitioners have not alleged that federal prosecution has been commenced for the offenses which their answers might disclose, nor that such prosecution is imminent, nor that the state officers are acting solely to serve the purposes of the federal government. Reasoning from the general rule, however, it would seem illogical that the imminence of federal prosecution would make any difference in the right of the state to compel testimony for its own purposes.

It should be noted that where a federal officer is a party to the compulsion of testimony by state agencies, the testimony so compelled would be barred by the Fifth amendment in a federal prosecution.[27] It has been held by the supreme court of the United States that federally self-incriminating testimony compelled by the state under a state immunity statute without participation by federal officers may be used against the witness in a federal prosecution notwithstanding the Fifth amendment.[28] Four of the present members

[26] 1 Ill. Rev. Stats. 1953, ch. 38, sec. 580a; *People v. Burkert* (1955), 7 Ill. (2d) 506, 131 N. E. (2d) 495, 496.

[27] *Knapp v. Schweitzer, supra*, footnote 18, p. 380, citing *Byars v. United States* (1927), 273 U. S. 28, 47 Sup. Ct. 248, 71 L. Ed. 520.

[28] *Feldman v. United States* (1944), 322 U. S. 487, 64 Sup. Ct. 1082, 88 L. Ed. 1408.

of that court have indicated that reconsideration of the *Feldman* decision would be appropriate.[29] If such reconsideration should occur and it be held that such compelled testimony is inadmissible in a prosecution of the witness in a federal court, the danger to which a witness is exposed as a result of a state immunity statute would be materially reduced.

4. *Witnesses in a John Doe proceeding need not be informed of the substance of the complaint on which the proceeding is predicated, nor the extent of the inquiry intended.* Petitioners alleged that they were not advised as to the nature and scope of the inquiry. Nothing in sec. 954.025, Stats., requires such disclosure and, indeed, much of the usefulness of the proceeding and the purpose for which the legislature authorized secrecy would be impaired if such disclosure were required.

This, of course, is not an appeal or other review of a contempt conviction or commitment where the record would disclose the questions asked and whatever other facts the witness might claim as a justification for refusal to answer. The only question presented by the petitions and motions to quash is whether every witness in a John Doe proceeding, as a matter of right, must be informed of the scope of the inquiry.

Petitioners argue that unless a witness is apprised of the scope of the inquiry he cannot determine whether a particular question is pertinent to the inquiry; that it would be a denial of due process to punish a witness for refusal to answer without giving a fair opportunity to determine whether the question asked is pertinent. They cite *Watkins v. United States*.[30] Watkins was a witness before a subcommittee of the committee on un-American activities of the House of Representatives. He refused to answer several questions. He was prosecuted under a federal statute making it a penal

---

[29] *Knapp v. Schweitzer, supra,* footnote 18, pp. 381–385.

[30] (1957), 354 U. S. 178, 77 Sup. Ct. 1173, 1 L. Ed. (2d) 1273, 1295, 1296.

offense to refuse to answer any question pertinent to the question under inquiry.[31] It was held, as we read the case, that the information available to Watkins as to the question under inquiry did not sufficiently define the question under inquiry to give him a fair opportunity to determine whether the particular questions put to him were pertinent and thus it was a denial of due process to convict him for refusal to answer a pertinent question.

There are several reasons why the *Watkins* decision does not support petitioners' position. In the first place, the *Watkins Case* was a review of a conviction of a statutory offense and the pertinency of the question to the subject of inquiry was an element of the offense which must be established. In the second place, the investigation with which Watkins was concerned was in the field of legislative investigation into "un-American" and "subversive" propaganda and activities. While a John Doe proceeding by definition can be concerned only with evidence of the commission of crimes, we do not say that it is impossible for a magistrate in a John Doe proceeding to go so far afield in his questioning as to exceed his authority to examine, but we presume here that the questions asked were reasonably related to inquiry into the commission of offenses. We decline to hold, as petitioners would have us do, that in any such proceeding a witness is entitled as a matter of constitutional right to a specification of a narrow field of inquiry into the commission of crime before questions may be put and answers required.

5. *A reasonable requirement of secrecy does not violate constitutional guaranties of freedom of speech.* Sec. 954.025, Stats., permits the examination to be secret and strictly limits inspection of the record. Petitioners each allege that Judge COFFEY ordered them not to discuss the proceeding and their testimony therein with anyone other than their attorneys. They claim this order violated freedom of speech.

---

[31] 2 U. S. C., sec. 192.

No authority has been cited in support of this claim. We think that within reasonable limits as to time and, of course, subject to discussion with petitioners' attorney and any other disclosures as may be necessary in defending petitioners in matters growing out of their participation in the John Doe proceeding, a secrecy order does not violate any of their rights.

There are statements in *State ex rel. Kowaleski v. District Court* [32] that secrecy is a privilege of the witness. Whatever the rights of the witness to secrecy, we think the state also has a legitimate interest in maintenance of secrecy for a reasonable time and any statement to the contrary in *Kowaleski* is withdrawn. Sometime ago this court said, with reference to grand-jury proceedings: [33]

"Various reasons for thus guarding the proceedings in the grand-jury room have been given, among them, to keep from an unarrested defendant the knowledge which would suggest escape, to prevent defendants from collecting perjured testimony for the trial, to render the witnesses before the grand jury more free in their disclosures. 1 Bishop, Criminal Procedure (4th ed.), sec. 857. And there exists the very practical reason, especially applicable to the situation where the jury is continuing to sit, that an inspection of the minutes, if permitted to any defendant for the purpose of preparing his defense, would advise the public of the subject under investigation, afford an opportunity to those interested in thwarting an inquiry into their acts of secreting evidence, tampering with prospective testimony, and generally embarrassing the work to be done by the grand jury, if not entirely defeating the object for which that body is designed."

The same reasons are applicable to a John Doe proceeding.

---

[32] *Supra,* footnote 12.

[33] *Steensland v. Hoppmann* (1934), 213 Wis. 593, 598, 252 N. W. 146.

6.   Petitioners have argued two other claims but we do not deem them properly before us on the present record.

Petitioners argue that there must have been fundamental defects in the initiation of the John Doe proceeding although none are alleged in their petitions, and they argue that it would be improper to commit them for contempt in a closed and secret session although the petitioners did not allege that this was about to be done.

*By the Court.*—Judgment reversed; cause remanded with instructions to grant prohibition absolute to the extent stated in part numbered one of the opinion filed herein.   No costs to be taxed.