**52 So.2d 756**

## STATE v. RODRIGUES.

No. 40246.

April 23, 1951.

Provost & Ernest, New Iberia, G. Wray Gill, New Orleans, for relator.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., L. O. Pecot, Dist. Atty., Franklin, and Minos Armentor, Asst. Dist. Atty., New Iberia, for respondents.

HAWTHORNE, Justice.

Relator, Emar Rodrigues, having been adjudged guilty of contempt of the Sixteenth Judicial District Court in and for the Parish of Iberia and sentenced to pay a fine of $100 and to be imprisoned in the parish jail for a period of 10 days and in default of payment of the fine to serve an additional 10 days, applied for and was granted remedial writs by this court with a stay order.

The relator was a witness before the grand jury of the Parish of Iberia, which had been called in special session for the purpose of investigating the offenses of public bribery, corrupt influencing, and malfeasance in office. He refused to answer a certain question propounded to him. Thereupon the grand jury went into open court accompanied by relator, and according to the minutes of the court the following then occurred:

"Thereupon the Grand Jury, through their Foreman, Owen J. McMahon, informed the Court that they were investigating the crimes of public bribery in accordance with the charge heretofore given them, and that they had called before them, Aymar Rodrigue [Emar Rodrigues] as a witness to testify in said investigation; that the following question was propounded to him, which he refused to answer: 'Did you from January 1, 1950 to February 10, 1951, collect any money from the owners of slot machines in the City of New Iberia?'

"Aymar Rodrigue, being present in open Court, was asked by the Court whether he would answer the said question or not, whereupon the said Aymar Rodrigue stated that he refused to answer the same and that he stood on his constitutional ground. The Court, thereupon read to him Article 1, Section 11 and Article 19, Section 13 of the Louisiana Constitution and thereupon ruled that the testimony sought of him was such as to afford him immunity from prosecution under this last article, and that he would have to answer the question or be held in contempt of Court. Again, the said Aymar Rodrigue stated that he refused to answer the question, and the Court found him guilty of contempt of Court and, under R.S. 15:12 sentenced him * * *."

These articles of the Constitution were read in open court to relator:

Article 1, Section 11. "No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. * * *"

Article 19, Section 13. "Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony."

In this court relator takes the position (1) that his refusal to answer the question, if it constituted contempt, was an act committed outside the presence or hearing of the court and that under LSA–R.S. 15:11 he was entitled to a hearing upon a rule to show cause served on him 24 hours before the time fixed for such hearing; (2) that, since he was not advised that anyone had been *charged* with the offense of bribery, Section 13 of Article 19 of the Constitution has no application, and that under Article 1, Section 11, he was granted immunity from testifying on the ground of self-incrimination; and (3) that, if Article 19, Section 13, is applicable, it does not afford complete immunity against prosecution for other but related crimes and amounts to no immunity at all.

■ (1) Under Article 1, Section 11, no one can be compelled to answer any question before a grand jury that may subject him to criminal prosecution, except as otherwise provided in the Constitution. A witness therefore has no right to refuse to answer a question propounded to him by a legally constituted grand jury except where the privilege of refusing has been granted by the Constitution, and, if he does refuse when the privilege is not available to him, his refusal constitutes contempt of court and is criminal contempt as that crime is defined in 17 C.J.S., Contempt, § 5, p. 7, as follows: "A criminal contempt is conduct that is directed against the dignity and authority of the court, or a judge acting judicially; it is an act obstructing the administration of justice which tends to bring the court into disrepute or disrespect."

■ Contempt of court has been classified as either direct or constructive. The direct contempt is committed in the presence of the court, and the constructive contempt is committed out of the presence of the court. See 17 C.J.S., Contempt, §§ 2, 3, 4. See also People v. Sherwin, 334 Ill. 609, 166 N.E. 513.

■ In 17 C.J.S., Contempt, § 71(a), we find the following: "It is the almost universal rule that, where a contempt is direct, in the immediate presence of the court, *summary punishment may be inflicted without affidavit, pleading, or formal charges.* In such cases, a formal entry showing the facts constituting a contempt and the proceedings taken constitutes the full record." (All italics ours.)

■ This rule is followed in this state and is given effect to in LSA—R.S. 15:11 dealing with the inherent power and authority of courts. Under this statute the

court may punish as a contempt every act interrupting or tending to interrupt its proceedings or impairing the respect due to its authority, provided that no one shall be punished for any contempt committed outside the presence or hearing of the court except after hearing on a rule to show cause served on him at least 24 hours before the hearing.

Relator's first contention then poses the question: Was the contempt of the witness in refusing to answer the question under the facts of this case a contempt committed outside the presence or hearing of the court as those terms are used in the statute?

█ In this state a grand jury is organized, impaneled, and charged under the direction of the court, and it is charged with the duty to investigate violation of the criminal laws and institute criminal proceedings where proper by returning bills of indictment. It may apply to the court for instructions concerning its duties, obligations, powers, and rights. It has the power and authority to administer oaths to each witness and to compulsory process of the witnesses who appear before it. The grand jury, therefore, is a constituent part, appendage, or arm of the court, and a contempt committed by any person in its presence is a direct contempt in the hearing and presence of the court itself.

In People v. Sheridan, 349 Ill. 202, 181 N.E. 617, 619, it was said: "The first contention of defendant is that the petition filed by the state's attorney was insufficient to charge him with conduct constituting contempt of court because it did not contain an allegation that the grand jury was investigating any complaint or charge of crime committed in Cook county or an allegation of the object of the questions asked defendant when he was before the grand jury. It is a sufficient answer to this contention to state that the alleged contemptuous conduct of defendant was before the grand jury, which was a constituent part of the criminal court, and his conduct was therefore in the presence of the court, and if contemptuous was a direct contempt, and it was unnecessary to file a petition or make a formal charge by affidavit in order that the court might punish him for the contempt. People v. Cochrane, 307 Ill. 126, 138 N.E. 291; People v. Sherwin, 334 Ill. 609, 166 N.E. 513. * * *"

The facts in People v. Cochrane, 307 Ill. 126, 138 N.E. 291, 293, are similar to the ones in the instant case. In that case Robert J. Cochrane was adjudged guilty of contempt of the court committed in open court in refusing to answer interrogatories which he, a witness before the grand jury, had refused to answer before the grand jury, and which he again refused in open court to answer. The ground of his refusal was that the answer would disclose a confidential matter. Cochrane contended, among other things, that he was tried, convicted, and deprived of liberty without due process of law and in violation of his constitutional and statutory rights because he

was brought into court without the formality of a charge against him and thus was not afforded an opportunity to be heard in answer to the charge. The court in affirming the judgment holding defendant to be in contempt of court said in the course of its opinion:

"* * * The plaintiff in error being a witness before the grand jury and refusing to answer questions, he, with the grand jury and state's attorney, went before the court and was given an opportunity to say whether he would answer the questions, and refused. He stood in open defiance of the court and of the authority of a judicial tribunal created and existing by virtue of the Constitution and laws of the state for the administration and enforcement of the criminal law. He had a full and impartial hearing before the court, and his refusal was in the presence of the court and punishable in a summary way by fine or imprisonment, or both, without any preliminary affidavit, process, or interrogatory. * * *

"* * * The grand jury is a constituent part of every court having general criminal jurisdiction. Boone v. People, 148 Ill. 440, 36 N.E. 99; People v. McCauley, 256 Ill. 504, 100 N.E. 182. A contempt committed in any place set apart for the use of any constituent part of the court during the session of the court is committed in the presence of the court. Any conduct constituting a contempt in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law is a contempt committed in the immediate view and presence of the court. 6 R.C.L. 492. Presence of the court means in the ocular view of the court, or where the court has direct knowledge, of the contempt; and, even if the plaintiff in error had been adjudged guilty of contempt for his refusal to answer questions before the grand jury, if [it] would have been in the presence of the court. * * *"

The district judge in his return cites and calls to our attention the case of State ex rel. Wintz v. Judge Criminal District Ct., 32 La.Ann. 1222, and states that the procedure approved by this court in that case is the one followed by him in the instant case. In that case, as in this one, the grand jury came into open court and through its foreman reported that a witness who had been duly sworn and subpoenaed before the grand jury had refused to answer a certain question propounded to him by the grand jury. The judge then called this witness to the bar of the court and directed him to answer the question. The witness stated to the judge in open court that he would not answer that interrogatory, and for his disobedience to its order the court adjudged him in contempt. Under a writ of certiorari obtained by the relator, this court approved this procedure, saying:

"It is settled that a court has authority to compel a witness to testify before a

grand jury organized and acting under its direction.

\*　　\*　　\*　　\*　　\*　　\*

" 'For a witness not to attend when subpoenaed; for a witness, when attending, to refuse to be sworn; for a witness, when sworn, to refuse to answer,' are enumerated as among the most common instances of contempt of court.

\*　　\*　　\*　　\*　　\*　　\*

"These are offenses committed in the face of the Court, directly obstructive of the administration of justice, and punishable by summary commitment, without the delay incident to ordinary contradictory proceedings, upon the broad principle, that 'men, placing themselves in opposition to the machinery of the law, are necessarily borne down by it, because the machinery will move on.'

\*　　.\*　　\*　　\*　　\*　　\*

"The proceedings subjected to our inspection are regular, orderly, and in conformity with all rules of procedure \* \*."

▆▆▆▆ Relator also complains that the failure to proceed by rule to show cause, to be served on him at least 24 hours before the hearing, as provided in LSA—R. S. 15:11, rendered the proceedings null and void in that he was thus denied the benefit of counsel to advise him as to his rights. Since we have concluded that the contempt in the instant case was a direct contempt, or one that occurred in the presence of the court, the portion of the statute relied on by him has no application. Furthermore, relator made no request for counsel, and, even if he had done so, what was said in People v. Cochrane, supra, would be pertinent here: "It is next argued that a right of the plaintiff in error was denied by refusing him an opportunity to consult with and be represented by counsel in the hearing before the court. To sustain that proposition counsel cite section 9 of article 2 of the Constitution, guaranteeing that in all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, and the provision of the Criminal Code that every person charged with crime shall be allowed counsel. \* \* \* Plaintiff in error did not come within either, because he was not being prosecuted for crime, but his relation to the investigation was as a witness. One occupying that relation to a criminal prosecution is not entitled to have an attorney at his elbow to advise him whether he shall answer a question or to have proceedings suspended until he can find and consult an attorney. Plaintiff in error never intimated that he would answer the questions if he was advised by counsel that it was his duty, and it is perfectly apparent that his only object was to obtain advice to aid him in obstructing the administration of justice."

There is therefore no merit in relator's first contention.

▆▆▆▆ (2) Relator's second contention is that the word "charged" as used in Sec-

tion 13 of Article 19 means "charged in an affidavit, bill of information, or indictment". Under this interpretation the provisions of this section would and could apply only in a trial before the judge or petit jury. If this were the interpretation intended by the drafters of the Constitution, they could have easily said, and would have said, "Any person may be compelled to testify in any lawful proceeding against anyone who may be charged in an affidavit, bill of information, or indictment with having committed the offense of bribery * * *." That the framers did not intend for this section to apply only to *trials* of accused persons is conclusively shown by its specific provision that any person may be compelled to testify "in any lawful proceeding". Certainly investigations being conducted by grand juries, those by district attorneys under LSA–R.S. 15:17.1, preliminary hearings before committing magistrates, and coroner's inquests are "lawful proceedings", within the meaning of the article.

In the instant case the grand jury under the charge of the court was investigating crimes of public bribery, and in doing so it was its sworn duty to inquire diligently into whether such a crime or crimes had been committed, and true presentment make. Under such circumstances, to give relator's interpretation to the article would, in effect, nullify and make meaningless this article insofar as grand jury investigations are concerned. Due to the nature of the crime of bribery, it is difficult, and often impossible, to secure evidence against any party to the transaction except by the evidence of another party to the bribe, and, if the grand jury is not permitted to compel such testimony, the perpetrator will very likely never be formally charged and brought to trial.

In our opinion it was the intention of the drafters of the Constitution that the word "charged" was not to be limited and restricted solely to a formal charge by affidavit, information, or indictment. Under this interpretation, the provision of the article which assures relator that his testimony cannot thereafter be used against him in any judicial proceeding fully protects him whether or not a formal charge is pending against any individual at the time relator's testimony is given in a lawful proceeding.

■■■ (3) The trial judge in his return has fully answered relator's third contention, that he cannot be compelled to testify because Article 19, Section 13, does not afford relator complete immunity against prosecutions for other but related crimes and amounts to no immunity at all. We think the judge is entirely correct in his view that complete immunity is not a right guaranteed to relator by any law for giving testimony pursuant to that section, and that the redactors of our Constitution were free to give complete immunity, or to withhold it entirely, or to give a restricted immunity. We find the authorities cited by

the judge in support of his reasoning to be decisive of this issue, and we shall now discuss them.

The Fifth Amendment to the Constitution of the United States provides that no person shall be compelled in any criminal case to be a witness against himself. According to an annotation, 118 A.L.R. 603, Adequacy of Immunity Offered as Condition of Denial of Privilege Against Self-incrimination, this provision of the Federal Constitution finds a substantial counterpart in the constitutions of all the states in the Union except those of Iowa and New Jersey. In the leading case of Twining v. State of New Jersey, 1908, 211 U.S. 78, 29 S.C. 14, 26, 53 L.Ed. 97, it was held that the exemption from self-incrimination provided by the Fifth Amendment was not one of the fundamental rights of national citizenship so as to be included among the privileges and immunities of citizens of the United States which the states are forbidden to abridge by the provision of the Fourteenth Amendment that no state shall deprive any person of life, liberty, or property without due process of law. In the cited case the Supreme Court said: "* * * we think that the exemption from compulsory self-incrimination in the courts of the states is not secured by any part of the Federal Constitution."

The above is full and complete authority for the proposition that the State of Louisiana, or any other state, is not compelled to guarantee to its citizens immunity from self-incrimination. Louisiana has granted the immunity, however, by incorporating into its Constitution Article 1, Section 11. This article, after providing that no person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to a criminal prosecution, then stipulates "except as otherwise provided in this Constitution". Article 19, Section 13, contains an exception to the above article.

We must keep in mind that we are here dealing with two sections of our Constitution, which are of equal force and are not in conflict, and not with a provision of the Constitution granting the privilege against self-incrimination and an act of the Legislature seeking to take it away or make an exception thereto.

The Constitution of Pennsylvania contains provisions which raised a similar problem considered by the Supreme Court of that state in Re Kelly's Contested Election, 200 Pa. 430, 50 A. 248, 249, 86 Am. St.Rep. 719. In that case the appellant was adjudged in contempt of court in refusing to answer certain questions propounded to him by two examiners appointed by the court to take testimony in a contested election case. After refusing to answer the questions he was brought into open court and there again refused to answer them. Among other things appellant contended that under the Bill of Rights of the Constitution of Pennsylvania he could not be required to give evidence against himself.

In answer to this contention the Supreme Court of that state said:

"* * * The accused was not directed to give evidence against himself. Section 9 of the declaration of rights declares that: 'In criminal prosecutions, the accused cannot be compelled to give evidence against himself.' Then in article 8, § 10, is this clause: 'In trials of contested elections, and in proceedings for the investigation of elections, no person shall be permitted to withhold his testimony upon the ground that he may criminate himself, or subject him to public infamy; but such testimony shall not afterwards be used against him, in any judicial proceeding, except for perjury in giving such testimony.' The argument that section 10 is fatally repugnant to section 9 of the declaration of rights, and that the latter must prevail, is without force. Assuming that the witness' answer would disclose the fact that he used money to purchase the votes of certain electors, his answer could not be used against him in any legal proceeding. Therefore he would be subject to no penalty or fine involving deprivation of liberty or forfeiture of land or goods. The most that he could suffer would be that odium which attaches to moral turpitude. This is a penalty which every witness suffers who testifies to the truth in ordinary issues tried every day in our courts, when he admits he was engaged in shady transactions, yet still not so flagrant as to be the subject of indictment in criminal courts. His statement subjects

him to no higher penalty than moral degradation, which is not a subject of criminal prosecution. The construction contended for by appellant would completely nullify section 10 and leave to corruption of the ballot complete immunity. It must be construed in harmony with the declaration of rights, and thus the full effect be given to both sections, as the framers of them and the people intended. As is aptly said by the superior court: 'Its (the constitution's) manifest purpose was to protect the purity of the ballot box, as fraud upon the ballot box is a crime against the nation. "Hence it was that the framers of the constitution sought to arrest the evil by embodying in the fundamental law the provision referred to. It is our duty to give it such a construction as will carry out the intent apparent on its face and the object which the people had in adopting it. Commonwealth [ex rel. Attorney General] v. Walter, 83 Pa. [105] 107 [24 Am.Rep. 154]."' * * *"

We fully agree with the conclusion made by the trial judge in his return to the writ, in which he said: "The conclusion is inescapable that our State has the right to grant immunity to its citizens from being compelled to give testimony that will incriminate them, or to withhold that right, or to give it under certain conditions or subject to certain exceptions. The people of this State have chosen to give it subject to the exception with which we are here concerned. We cannot ad-

judicate on the wiseness of their action. The provisions are plain, unambiguous and subject to effective enforcement."

For the reasons assigned, the writs issued herein are recalled, the stay order is set aside, and the sentence of the lower court adjudging relator to be in contempt is affirmed.

MOISE, J., concurs.