HAMLIN, Justice.
 

 The State of Louisiana appeals from a judgment of the trial court which maintained a supplemental motion to quash, annulled, quashed, and set aside a bill of information charging the defendant with a violation of LSA-R.S. 14:67, “Theft” ($170.43, property of the East Baton Rouge Parish School Board), and discharged the defendant from further proceedings in the matter. Similar judgments were rendered in two companion cases, involving alleged violations of LSA-R.S. 14:67 by defendant,
 
 [1]
 
 and appeals were taken to this Court;
 
 [2]
 
 the reasoning of this opinion will apply thereto.
 

 The above judgments were rendered on July 29, 1959; the State excepted and reserved a formal bill of exceptions. On August 12, 1959, the State filed in each case a bill of exceptions
 
 [3]
 
 to the ruling.
 
 *892
 
 The bill set forth the supplemental motion to quash
 
 [4]
 
 and stated that among other documents counsel was making the following a part of the exception: (6) the formal judgments pertaining to the supplemental motion to quash, (7) the bills of information, (8) the defendant’s motions for bills of particulars and the State’s answers, (9) the defendant’s original motions to quash, to which no written answers were filed by the State, and (10) defendant’s motion of demurrer, to which no written answers were filed by the State. Hereinafter, we shall refer to one judgment, one bill of exceptions, one per curiam,
 
 [5]
 
 and one appeal.
 

 On January 22, 1960, the trial judge filed his per curiam to the bill of exceptions. He stated that the bill was timely tendered, but he declined to sign same for the reasons that it was incorrect, incomplete, and set forth matters not embraced in the bill of exceptions at the time it was reserved in open court.
 
 [6]
 
 The minutes of the trial
 
 *894
 
 court (January 22, 1960) reflect that after the trial judge filed his per curiam, he entered an order of appeal to the Supreme Court of Louisiana on the motion of the Assistant District Attorney. No attempt was made to mandamus the trial judge to sign the bill of exceptions before the appeal was granted (LSA-R.S. 15:499, cf. State v. Young, 153 La. 605, 96 So. 275), and the matter is now before us for review without a signed and perfected bill of exceptions.
 

 “It is now well settled in our jurisprudence that bills of exception must be presented to and signed by the judge before the appeal is taken because when the appeal is taken the lower court is divested of jurisdiction. * * ” State v. Scott, 227 La. 198, 78 So.2d 832.
 

 “On this bill of exceptions (it is the only one in the record) defendant seeks a reversal of his conviction and sentence and the obtaining of a new trial. The bill cannot be considered, however, for the réason that it was not timely perfected. The signature of the trial judge was not affixed thereto before the appeal was granted. * * ” State v. Woods, 220 La. 162, 55 So.2d 90.2, 903.
 

 In its brief the State contends that “the judge of the lower court erred on matters of law and that error is patent on the face of the record. Under these, circumstances, the State submits the signing of the formal bills by the judge of the lower court is not vital. In support of its contention the State cites the case of State v. Bradley, 144 La. 459, 80 So. 657, wherein the State appealed from a judgment quashing an information, and reserved a bill of exceptions but no formal bill was signed. * * ” The State further argues that the per curiam of the trial judge shows conclusively that his rulings were relating to questions of law, which hinged on his interpretation of certain provisions of the State Constitution.
 

 Appellee submits to this Court that there are no errors patent on the face of the record and that the appeal should be summarily dismissed. He argues that if this Court were to review the rulings of the
 
 *896
 
 trial judge, it would be necessary to give consideration to the evidence in the transcript which is not incorporated in any formal bill of exceptions. Appellee further submits that in the case of State v. LeBleu, 203 La. 337, 14 So.2d 17, this Court decided once and for all the necessity of the State’s preserving a bill of'exceptions before any evidence could be brought before it on appeal. See, State v. Pitcher, 236 La. 1, 106 So.2d 695.
 

 Because of the unusual events which took place during hearing in the trial court, the peculiar and exceptional circumstances of this case, the doubt expressed by the trial judge as to the responsibility of appellant to compile certain items alleged to have been attached to the bill of exceptions, the consequences of any decision we might render, and the gravity of the issues involved, we have decided that justice requires that we treat the instant bill of exceptions as signed by the trial judge and perfected by the State. If we were to examine this matter for error patent on the face of the record (LSA-R.S. 15:503)—which we would do out of an abundance of caution (State v. Horaist, 231 La. 125, 90 So.2d 802)—we would study almost all of the same documents—other than the evidence attached to the bill of exceptions (State v. Pitcher, supra)-—which we shall now study in considering the instant bill of exceptions. Additionally, we are preventing further litigation which would undoubtedly follow a summary dismissal of this appeal.
 

 “We must keep in mind that the law abhors a multiplicity of suits; the modern-day tendency is to relax the technical rules of pleading in order to arrive at the truth and dispose of a case in an expeditious manner. * * ” State v. Garner, 238 La. 563, 115 So.2d 855, 857.
 

 The supplemental motion to quash filed by defendant sets forth that in the Spring of 1959 the Grand Jury for the Parish of East Baton Rouge made a sweeping investigation of the East Baton Rouge Parish School Board, for the purpose of determining whether public bribery was being committed by its members. Defendant alleged that he made two appearances before the Grand Jury (one in response to subpoena), unrepresented by counsel, and was questioned at length concerning certain expense accounts. He stated that he denied any wrong-doing whatsoever, but that he did make certain admissions. He further alleged that as a result of his testimony three true bills of indictment for theft were brought against him by the Grand Jury. Because these bills charged prescriptible offenses, they were nolle prosequied—on the same day that motions to quash filed by defendant were to be tried. Thereafter, three bills of information charging theft
 
 [7]
 
 
 *898
 
 —based on the same evidence and testimony which formed the basis of the original indictments—were filed against the defendant by the District Attorney.
 

 In his supplemental motion to quash, defendant contended that the bills were grounded upon his testimony before the Grand Jury. He argued that they were defective, because they were based in whole or in part on evidence secured in violation of Article I, Section 11, and Article XIX, Section 13, Self Incrimination and Immunity, Louisiana Constitution of 1921, LSA, and Amendments V and XIV of the Constitution of the United States. He further contended that the bills of information were insufficient to form the basis of a charge against him or trial.
 

 The instant bill of information, as well as the bills of information in the two companion cases, charged that the defendant committed theft from the East Baton Rouge Parish School Board. In answer to a request for a bill of particulars, the State averred that the defendant submitted an expense account to the East Baton Rouge Parish School Board for an official trip, whereas, in truth and fact, he had received the money for the trip from an architectural firm. Similar answers were filed in the two companion cases. Suspicion of such alleged wrong-doing had prompted the Grand Jury Hearing.
 

 With respect to the Grand Jury Hearing, the trial judge correctly states in his per curiam:
 

 “The evidence on the hearing revealed that the defendant made two appearances before the grand jury. On the date (March 3, 1959) of his first appearance and just prior thereto, he signed a waiver * * * waiving the immunity accorded him under the Constitution and laws of the State of Louisiana and the United States of America relative to self-incrimination, and voluntarily consenting to testify before the grand jury, ‘as to any fact concerning alleged activities relating to the crime of public bribery and/or similar offenses in connection with my employment as Director of Planning and School Building Construction for East Baton Rouge Parish School Board.’ On his second appearance before the grand jury (April 1, 1959) he was not asked to sign a waiver, nor was he told that anything that he might say could be used against him. This second appearance was not voluntary on his part. The grand jury caused a grand jury subpoena ^o be issued for his appearance * * *. This subpoena was served on him and in response thereto he appeared before the grand jury and testified for a period of about two
 
 *900
 
 hours. He was there interrogated about public bribery in connection with certain money received by him and about an outboard motor accepted by him. He was also questioned about his expense accounts covering certain official trips which he made as an employee of the school board. The defendant testified that on neither of his appearances did he have the advice of counsel. He stated under oath that he answered all questions propounded to him freely to the best of his belief. He was asked whether he failed or refused to answer any questions propounded to him. His answer was: ‘Not that I can recall. If I had an answer for it I tried to answer it.’ As a result of this grand jury investigation there were two no true bills for public bribery returned against him and three true bills for theft. (The three true bills of indictment for theft were nolle pressed by the district attorney, as explained above, and the three bills of information * * * were substituted in their stead.)
 

 “On cross-examination at the hearing when the Supplemental^Motions to Quash were being taken up, the defendant admitted that he had given a statement to the press sometime before the grand jury began its investigation of these charges in which he was involved. The district attorney introduced this statement in evidence. * * * During this cross-examination, it was called to the attention of the court that the district attorney was using a transcript of the testimony which the defendant had given at the two meetings of the grand jury before which the defendant had appeared. The district attorney admitted that there had been made at his discretion a transcript of the entire testimony given by the defendant before the grand jury and that he had this transcript of testimony in his possession. Defendant’s counsel objected to its use by the district attorney when the latter was cross-examining the defendant at this hearing.
 

 “Counsel for the defendant pointed out in argument that the waiver signed by the defendant prior to his testimony before the grand jury referred to the defendant’s immunity under the Fifth Amendment of the Constitution of the United States and the immunity afforded the defendant under Article 1, Section 11 of the Constitution of this state, and that the defendant was never informed of the fact that since this was an investigation of public bribery the defendant under Article 19, Section 13 had no rights to waive. Further, that the defendant having been subpoenaed to testify before the grand jury on his
 
 *902
 
 second appearance before that body, was questioned at length about public bribery and that since he did not enjoy immunity he had to testify to all matters of public bribery within his knowledge, even though in so doing he might have incriminated himself.”
 

 The trial judge found that the testimony given by the defendant before the Grand Jury formed the basis of the information preferred against him. He concluded that using the testimony as the basis of a bill of information or -indictment constituted a violation of rights granted to the defendant under the Constitution of Louisiana.
 

 In this Court, appellant argues that Article XIX, Section 13, Louisiana Constitution of 1921, did not grant defendant immunity under the circumstances set forth in this matter, and in support of its contention cites LSA-R.S. IS :468. Appellant also submits that defendant’s rights under Article I, Section 11, of the Louisiana Constitution of 1921, were not violated when he appeared before the Grand Jury.
 

 Appellee contends that the trial judge was correct in maintaining the supplemental motion to quash, and that his constitutional rights were violated by the filing of the present bill of information.
 

 Article I, Section 11, Louisiana Constitution of 1921 provides : ,
 

 “No person shall bp compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. * * * ”
 

 Article XIX, Section 13, Louisiana Constitution of 1921, recites:
 

 “Any person may be compelled to testify in any lawful . proceeding against any one who may be charged with having committed tlie offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings except for perjury in giving such testimony.”
 

 LSA-R.S. IS :468 provides: '
 

 “Any person may be compelled to testify in any lawful proceeding against another charged with commercial bribery, public bribery, bribery of voters or corrupt influencing, and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or expose him to public infamy; but such testimony shall not afterwards he used against him in any judicial proceeding except for perjury in giving such testimony.”
 

 
 *904
 
 Evidence of public bribery has always been one of the hardest matters to ferret out in our criminal jurisprudence. Herein, the trial judge correctly stated:
 

 “ * * * it might be impossible to obtain evidence against one accused of bribery without the testimony of another, himself involved in the transaction.”
 

 In order to assist our grand juries in exercising their investigative powers and performing the tasks assigned to them, the Constitution has made the giving of testimony with respect to bribery mandatory under certain peculiar circumstances. In order to comply with Section 11 of Article I, supra, the Constitution (Article XIX, Section 13) has granted immunity, except for perjury, to any person who may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery.
 

 The evidence herein adduced is conclusive to the effect that appellee appeared twice before the Grand Jury—once voluntarily, and the second time in answer to a subpoena from the Grand Jury. Ón both occasions, he was questioned at length about matters which later became the basis of the information filed against him by the District Attorney. The State admits that the appellee was the person against whom the investigation for bribery was levelled.
 

 The State argues that Article XIX, Section 13, supra, does not extend its protection to an accused. In other words, it contends that the protection offered applies only to one testifying against another person. The State further contends that since LSA-R.S. 15:468 specifically states “against another,” the phrase “against any one” in the Constitution means “against another.”
 

 We do not agree with the ingenious argument presented by learned counsel for the State. Adherence to such an interpretation of the ¡aw would be a violation of our fundamental concepts against self incrimination. The articles of the Constitution and LSA-R.S. 15 :468 can be read together. In reciting “against another,” LSA-R.S. 15 468 was not countenancing an occasion where one would be testifying against himself.
 

 Even though on one occasion the defendant appeared voluntarily before the Grand Jury, it was not incumbent upon it to hear his testimony. In advance of a hearing with respect to bribery, the Grand Jury must be cognizant of the fact that the testimony adduced cannot form the basis of an indictment against the witnesses heard. Likewise, the District Attorney cannot file an information grounded on the information adduced before the Grand Jury. The trial judge correctly stated:
 

 
 *906
 
 “* * * the defendant appeared before the grand jury in the capacity of an accused and as a witness, because the bribery charges were levelled at him and others. It was my observation that it was improper and a mistake for the district attorney and the grand jury to question the defendant under oath, about the bribery charges and expense accounts if the State intended to prosecute the defendant. The grand jury was not required by law to let the defendant testify on his first appearance. It seemed to me, the defendant offered to become a witness for the State, and the district attorney accepted his offer, perhaps unwittingly.”
 

 In the case of State v. Dominguez, 228 La. 284, 82 So.2d 12, 17, we stated:
 

 “In the instant case, had relator testified in response to the questions propounded to him in connection with the investigation of public bribery, he would have enjoyed full immunity from prosecution under State law. The constitutional provision, Art. 19, § 13, prohibits the use of such testimony
 
 against him rin any judicial proceed
 
 ings, except for perjury in giving such testimony’. Accordingly, even if relator’s answers to the questions propounded had been a full confession of his gambling activities, as charged in the pending indictments brought by the State against him, the State would have been barred from using such testimony in the prosecution thereof, as well as from its use in any other judicial proceeding. See, State v. Rodrigues, 219 La. 217, 52 So.2d 756.” See, State v. Ford, 233 La. 992, 99 So.2d 320.
 

 The indictment—here, the information—is the foundation of the criminal case, and if it is grounded, in whole of in part, on evidence secured in violation of a constitutional right, it is an absolute nullity. State v. Harrell, 228 La. 434, 82 So.2d 701. We conclude that the instant information was grounded on evidence secured in violation of appellee’s constitutional rights and must be quashed.
 

 For the reasons assigned, the judgment of the trial court is affirmed.
 

 HAMITER and HAWTHORNE, JJ., concur in the decree.
 

 FOURNET, C. J., absent.
 

 [1]
 

 .Thefts of $105.80 and $120.80, property of the East Baton Kougo Parish School Board; the three cases were consolidated for trial in the lower court.
 

 [2]
 

 . 240 La. 907, 125 So.2d 406; 240 La. 908, 125 So.2d 406.
 

 [3]
 

 . The bills are identical in the three proceedings.
 

 [4]
 

 . The supplemental motion to quash is identical in the three proceedings.
 

 [5]
 

 . The per curiams are identical in the three proceedings.
 

 [6]
 

 . The per curiam recites in part: “To the knowledge of the court and as reflected in the minutes of court, the Bill of Exception taken and reserved by the State did not include items 6, 7, 8, 9, and 10 set forth in the written Bill of Exception tendered to the court for signature. In this connection, the assistant district attorney who, along with the district attorney, represented the State at the hearing on the Supplemental Motions to Quash, requested of the judge in an office conference that the State bo permitted to add certain matters to the Bill of Exception not specifically mentioned at the time the bill was reserved in open court, as he wished to make available to the Supreme Court matters embraced in certain pertinent pleadings filed by the State which were not directly involved in the Supplemental Motions to Quash, since the State did not file written answers to the defendant’s Supplemental Motions to Quash. I stated to him that I could not permit the extension or enlargement of the Bill of Exception as actually taken and reserved immediately after the rendition of judgment by the court. This conference took place before the Bill of Exception in these cases was perfected and presented to the court for signature. I stated to the assistant district attorney that I thought he could cover the points of law set forth in the pleadings he had reference to in a brief filed in the Supreme Court. He was desirous, however, of having these matters included in the transcript to be forwarded to the Supreme Court. It was then that I informed him that I could see no objection to these matters being included in the transcript, so long as they did not form a part of the Bill of Exceptions. He requested that I inform the Clerk of Court to that effect. This, I agreed to do,
 
 and
 
 did so.
 

 “It will be noted that none of the pleadings, exhibits, testimony and other matters referred to in the Bill of Exception as perfected were
 
 attached
 
 thereto, although the Bill of Exception made them a
 
 part of the Exception.
 

 “The question arises as to whether under the circumstances, the Bill of Exception was correct and complete when it was tendered to the Judge for signature. In such a situation is it the duty of appellant to attach the pertinent matters to the Bill? If not, is it the duty of the Clerk of Court to do so?
 

 “It is to be observed that when counsel for the State took the Bill of Excep
 
 *894
 
 tion in open court he asked that certain pleadings, the entire transcript of the
 
 proceedings
 
 of July 23, 1959 including testimony and exhibits
 
 ‘be attached to and made a part of the bill.’
 
 In his perfected Bill of Exception -which he presented to the Judge for signature he stated that after the court sustained the Supplemental Motion to Quash and ordered the prosecution dismissed, the State ‘excepted and reserved a formal bill of exception making the following
 
 a part of the exception:’
 
 It will be seen from this latter statement that counsel for the State, not only did not
 
 attach
 
 the pleadings, the entire transcript of the
 
 proceedings
 
 of July 23, 1959, including testimony and exhibits to Ms bill, but did not even ask that they be
 
 attached
 
 to the bill.”
 

 [7]
 

 . The instant matter involves these three bills.