321 So.2d 349 (1975)
STATE of Louisiana
v.
Eugene L. WALLACE, Jr., et al.
STATE of Louisiana
v.
Eugene L. WALLACE, Jr.
Nos. 55661 and 55662.
Supreme Court of Louisiana.
March 31, 1975.
On Rehearing November 4, 1975.
*350 William J. Guste, Jr., Atty. Gen., Julian R. Murray, Jr., Barbara Rutledge, Asst. Attys. Gen., George T. Mustakas, II, Staff Atty., Melvin Barre, Dist. Atty., New Orleans, for plaintiff-appellant.
Edward M. Baldwin, New Orleans, for Willis J. Poirrier, Jr.
Robert I. Broussard, Gretna, for Henry Hymel and Raymond LeBouef.
John P. Nelson, Jr., New Orleans, for Stuart E. Creel and Gerard Alexander.
Robert S. Mellon, Mellon & Cavanaugh, Denham Springs, for Eugene L. Wallace, Jr.
DIXON, Justice.
The State appeals these two cases, after the trial judge sustained motions to quash the indictments.
All six defendants, Eugene L. Wallace, Jr., Stuart Creel, Henry Hymel, Willis Poirrier, Raymond LeBouef and Gerard Alexander, were indicted in case No. 55661 for the violation of R.S. 14:26, conspiring to commit public bribery. In No. 55662 Wallace alone was charged with the violation of R.S. 14:67, for theft by fraud of $68,500 from the South Louisiana Port Commission.
*351 The two cases have a common issue: are the defendants immune from prosecution under Article 19, § 13, Louisiana Constitution of 1921 [1] and R.S. 15:468[2] because they appeared and testified before a grand jury investigating public bribery? As for the defendant Eugene L. Wallace, Jr., there is the additional question of whether his testimony before a federal grand jury, when used by the State grand jury, resulted in his immunity from State prosecution.
On March 15, 1974 the prosecutor sent letters to the defendants inviting their appearance before the grand jury on March 26. All defendants appeared, except Wallace.
The trial judge interpreted the letters of "invitation" as containing a degree of compulsion equal to a subpoena, and held that, having allowed the defendants to testify before the grand jury, they were automatically cloaked with immunity from prosecution under the Constitution and statute.
We find that the self incriminating testimony of the defendants was not "compelled" under Article 1, § 11 of the Louisiana Constitution of 1921, nor under the Fifth Amendment of the United States Constitution; the record demonstrates that the defendants (with the exception of Wallace) voluntarily appeared before the grand jury and testified, after having been fully warned by the prosecutor of their rights not to appear and not to testify; and that the defendants knowingly waived their constitutional protection against self incrimination.
The motions to quash were tried on the basis of stipulations among the parties, and the introduction of grand jury testimony of each defendant before the State grand jury, except Wallace, whose federal grand jury testimony, used by the State grand jury, was introduced.
Creel was advised that he need not give any testimony before the grand jury that would tend to incriminate him; that he could terminate the examination at any time; that he had a right to consult with an attorney, and that the examination would be recessed at any time for such consultation; that the prosecutor possessed information, if true, "would affect" the defendant; that the defendant need not testify; that if more time were desired by the defendant to consider whether he would testify, he would be excused until the following day in order to consult a lawyer. This explanation was made to Creel by the prosecutor both out of the presence of the grand jury, in the prosecutor's office, and at the beginning of his testimony before the grand jury. Creel stated that "it is rather short notice but I made my decision to testify and I am going to stay with it stand by that."
Hymel was informed that he had a right not to appear before the grand jury; that if he wished he could return on the following day and inform the prosecutor if he wished "any additional time" (to which Hymel replied, "No, this is fine. I'm ready."); Hymel was warned specifically that he need not answer any questions which tended to incriminate him; that his testimony could be used against him; that *352 the examination would be recessed if he wished to consult his attorney at any point.
Poirrier was informed of his right to seek legal advice to determine whether he would appear; that he could postpone until the following day a decision; that he need not appear before the grand jury; that he need not answer any questions which might tend to incriminate him; that the testimony could be used against him; that the examination could be recessed for the defendant to consult with his lawyer; that the prosecutor had information which might "implicate you in a violation."
LeBouef was informed by the prosecutor that he had received allegations of possible criminal violations by the defendant; that he could postpone a decision about the appearance until the following day; that he need not answer any questions which might tend to incriminate him; that the examination would be recessed at any time for the defendant to consult his attorney. LeBouef affirmed that he understood his rights and was willing to answer questions before the grand jury.
Alexander was likewise advised that the prosecutor possessed allegations of his possible criminal violations; that he could have until the following day to consult an attorney and make a decision about his testimony; that he need not answer questions which might tend to incriminate him; that his testimony could be used against him; that the hearing would be recessed if the defendant wished to consult his attorney during the examination.
The defendants do not complain before us that they were inadequately informed of their rights (although this is not conceded). At one point in brief it is noted that Hymel "was not told in the Grand Jury" that he did not have to testify.
The evidence before us shows that the defendants were adequately informed of their rights against self incrimination, of the fact that the grand jury was concerned about allegations of criminal activity of each of the defendants, that they would not be required to answer questions which tended to incriminate them, and need not testify unless they wished, and could postpone a decision about whether to testify until the following day. The record is clear that these defendants made an informed decision to waive their rights against self incrimination and to testify before the grand jury. The decision to testify was theirs. They were not compelled.
Defendants argue that, in order to reverse the district court's ruling on the motion to quash, we must overrule State v. Smalling, 240 La. 887, 125 So.2d 399 (1960), on rehearing, 240 La. 915, 125 So.2d 409 (1960) and State v. Callahan, 247 La. 525, 172 So.2d 668 (1965). Although the defendants can find confort from dicta in the Smalling case, both the trial court and this court specifically found that the defendant was compelled to testify before the grand jury, and that his testimony formed the basis of the indictments which were correctly quashed by the trial court.
The issue in the Callahan case was whether the indictments, quashed by the district court, were based on the defendant's testimony before a grand jury.[3] In that case, the State conceded "that the defendant could not refuse to testify before the Grand Jury."
*353 It is the position of the defendants that their appearance before the grand jury was, to some degree at least, "compelled." Maryland v. Panagoulis, 253 Md. 699, 253 A.2d 877 (1969); Maryland v. Comes, 237 Md. 271, 206 A.2d 124 (1965); Atkinson v. State, 190 Ind. 1, 128 N.E. 433 (1920). Further, defendants argue that, having been compelled to appear, Article 19, § 13 of the Louisiana Constitution of 1921 automatically granted immunity of use from such testimony (except perjury).
Some review of the jurisprudence of the State is justified in view of the apparent confusion about the conflict between the constitutionally protected right against self incrimination and the effect of statutes granting certain immunities in return for testimony concerning public bribery.[4]
In State v. Rodrigues, 219 La. 217, 52 So.2d 756 (1951), the defendant had been held in contempt for failure to answer questions before a grand jury. Rodrigues is a confusing case. The opinion does not make it clear, but seems to be based on these facts: the witness was asked, before the grand jury, whether he had paid certain money; he declined to answer on the grounds of possible self incrimination; the court read to him, in addition to Article 1, § 11, Article 19, § 13 (immunity from use of self incriminating testimony) of the Louisiana Constitution of 1921. In affirming the conviction, the court seemed to assume that the defendant had been granted immunity. The defendant had refused to testify, even after the trial court read to him the provisions of Article 19, § 13. The contempt conviction was affirmed.
In State v. Dominguez, 228 La. 284, 82 So.2d 12 (1955), the defendant was found guilty of contempt in the trial court for refusing to answer the questions of the grand jury investigating an allegation of public bribery. Defendant was also under federal indictment for a related offense. Although reversing the conviction because of a belief that State immunity would not protect defendant from federal prosecution, the court held defendant would have been protected from prosecution in the State court if he had testified:
"In the instant case, had relator testified in response to the questions propounded to him in connection with the investigation of public bribery, he would have enjoyed full immunity from prosecution under State law. The constitutional provision, Art. 19, § 13, prohibits the use of such testimony against him `in any judicial proceedings except for perjury in giving such testimony'. Accordingly, even if relator's answers to the questions propounded had been a full confession of his gambling activities, as charged in the pending indictments brought by the State against him, the State would have been barred from using such testimony in the prosecution thereof, as well as from its use in any other judicial proceeding. *354 See, State v. Rodrigues, 219 La. 217, 52 So.2d 756." (Emphasis added). 82 So.2d 12, 17.
The court did not discuss the result of voluntary, as compared to compelled, testimony.
In State v. Ford, 233 La. 992, 99 So.2d 320 (1958), the defendant was granted immunity, refused to testify nevertheless, and was convicted of contempt. The conviction was affirmed. (The court erroneously held that the Fifth Amendment of the United States Constitution was not available to a witness in a State prosecution. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Murphy v. Waterfront Commissioners, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
Defendants contend that the Louisiana cases establish a bar to prosecution (or at least to the use of any testimony) of any witness who appears before a grand jury and testifies in a public bribery case. This is not supported by the holdings of the Louisiana cases. Neither the constitutional provisions nor the statutory provisions support defendants' contentions.
Certainly the federal interpretations of the Fifth Amendment of the United States Constitution do not support the defendants' position that, once a witness testifies in a bribery investigation before a grand jury, he is automatically granted "use immunity" of his testimony. In United States v. Winter, 348 F.2d 204, 207 (C.A.A.2 1965) it was said "to suggest that once an individual is named by witnesses before a grand jury under circumstances which may lead to his indictment he thereby automatically gains immunity from subpoena would denude that ancient body of a substantial right of inquiry."
Again, in United States v. Scully, 225 F.2d 113, 115-116 (C.C.A.2 1955), the court stated:
"The principle which underlies the rule that the defendant in a criminal trial may refrain even from being sworn as a witness, has no application to proceedings before a Grand Jury. . . .
. . . . . .
". . . Such a body is not charged with the duty of deciding innocence or guilt and, for this reason, its proceedings have never been conducted with the assidious regard for the preservation of procedural safeguards which normally attends the ultimate trial of the issues. Thus, in such proceedings, there is no right to counsel, no right of confrontation, no right to cross-examine or to introduce evidence in rebuttal and ordinarily no requirement that the evidence introduced be only such as would be admissible upon a trial." (Citations omitted).
No authority has been suggested to the court to indicate that there can not be a voluntary and knowing waiver of the constitutional right against self incrimination by a witness before a grand jury, even though that witness might be under investigation for possible criminal activities.
The additional question involving the defendant Wallace arose from the use by the State grand jury of at least a part of his testimony before a federal grand jury. Wallace had received an invitation to appear before the State grand jury, as had the other defendants. Unlike the others, he did not appear.
Before the federal grand jury, Wallace was advised by the prosecutor that the grand jury was investigating violations of federal criminal laws which might involve Wallace directly or indirectly. Wallace was advised of his constitutional right against self incrimination, and was offered an opportunity to consult with his counsel outside the presence of the grand jury, and was informed that anything he said could be used against him. In the course of the testimony, Wallace did step outside to talk with his lawyer, and did resort to the protection of the Fifth Amendment before the grand jury as to certain questions.
*355 The defendant argues that, since Wallace's testimony before the federal grand jury was obtained in response to a subpoena, it was "compelled" and that, consequently, his self incriminating testimony was obtained in violation of the Fifth Amendment of the United States Constitution. The State contends that Wallace was not compelled to testify before the federal grand jury. The record before us, however, indicates that Wallace received an entirely different treatment before the federal grand jury than did the other defendants before the State grand jury. The other defendants were informed that they need not testify at all, and that they could delay a decision until the next day. The federal prosecutor did not inform Wallace, in that portion of the grand jury testimony in the record, that he need not testify. He was subpoenaed. He was called into the grand jury room more than once, apparently, and was informed on one occasion by the prosecutor that he would not be released from the subpoena. Although he was informed that he could not be compelled to testify against himself, he was also told "you can take the Fifth Amendment on anything that may incriminate you personally. You do not have the right to take the Fifth Amendment on anything that may be incriminating to Mr. Kramer or anyone else." He was then allowed to step outside and consult with a lawyer, who was identified by the prosecutor as "Mr. Kramer's attorney."
We cannot gather from the testimony before us that Wallace knowingly waived any right accorded him before the federal grand jury. He was compelled to appear and compelled to testify. Although he did resort to the Fifth Amendment on occasion, he answered many questions, some of them involving the other defendants in the cases before us. It does not appear that Wallace knew that his testimony would be given to the State grand jury.
The question, then, is whether Wallace, subpoenaed to testify before the federal grand jury, informed of his constitutional right against self incrimination, was "compelled to give evidence against himself" in violation of Article 1, § 11 of the Louisiana Constitution of 1921 and Amendment Five of the United States Constitution.
State v. Harrell, 228 La. 434, 82 So.2d 701 (1955) and State v. Jemison, 240 La. 787, 125 So.2d 363 (1960), sustained motions to quash when the defendants, one accused of murder and the other of theft, were required to testify before the grand jury without being informed of the constitutional right against self incrimination. The defendants before us, except for Wallace, were fully informed and were not required to testify. Wallace, however, was not informed in the federal system as fully as the defendants before the State grand jury. He was told he need not incriminate himself, and was given the right to step outside and consult a lawyer who represented another person under investigation.
Wallace was not informed as was the defendant in United States v. Capaldo, 402 F.2d 821 (C.C.A.2 1968) "that he had a right to remain silent." Many of the questions asked of Wallace and much of the subject matter of his examination involved his dealings with the other defendants in this case, members of the South Louisiana Port Commission. It is difficult for us to see how these questions and questions about this subject matter would not "tend to incriminate." Nevertheless, it is not difficult to understand how the incriminating tendencies of such testimony would escape a witness before a grand jury.
If Wallace's testimony before the federal grand jury had been taken before a State grand jury, it would have been "compelled" (Article 1, § 11 of the Louisiana Constitution of 1921). Article 19, § 13 of the Louisiana Constitution of 1921 permits the compulsion in a bribery investigation, but prohibits the use of the compelled testimony in proceedings against the witness.
There is no longer the separation between the state and federal systems that once existed, allowing one system to obtain *356 evidence in a manner prohibited to the other, and permitting its use in either.
Murphy v. Waterfront Commissioners, supra, held that constitutional privilege against self incrimination protects a state witness against incrimination under federal as well as state law, and a federal witness against incrimination under state as well as federal law.
We will not sanction procedures under the federal system which violate Louisiana Constitution guarantees. Consequently, it was error to use in the State grand jury proceedings the testimony Wallace was compelled to give before the federal grand jury.
As to the defendant Wallace, the ruling of the trial judge quashing the indictments is affirmed. As to the defendants Creel, Hymel, Poirrier, LeBouef and Alexander, the ruling of the trial judge quashing the indictments against them is reversed, the indictments are reinstated and the case is remanded to the district court for further proceedings.
SANDERS, C. J., concurs in part, but dissents as to the quashing of the bill of information against Wallace.
BARHAM, J., concurs in part and dissents in part and assigns reasons.
MARCUS, J., concurs in part but dissents as to the quashing of the bill of information against Wallace.
BARHAM, Justice (dissenting in part, and concurring in part).
I dissent from the majority's disposition of the issue regarding the use in the State grand jury of a part of Wallace's testimony before a federal grand jury. In their approach to this issue, the majority have adopted a very dangerous view that is contrary to that prevailing in federal and other state jurisdictions.
While I strongly believe in the protection of individual liberty and in the protection of the Fifth Amendment right against self-incrimination, I do not find that these protections are encroached upon under the facts surrounding Wallace's testimony before the federal grand jury. Rather, I find that the majority have created a trap for the unwary grand jury. The majority view affords protection that is not within the ambit of the constitutional guarantee against self-incrimination.
I respectfully dissent in part for these reasons.
I concur in the disposition of the majority as to the defendants who appeared before the State grand jury.

On Rehearing
MARCUS, Justice.
Defendant, Eugene L. Wallace, Jr., was indicted by the St. Charles Parish Grand Jury for conspiracy to commit public bribery, in violation of La.R.S. 14:26 and La.R.S. 14:118, and for theft, in violation of La.R.S. 14:67. Defendant filed motions to quash the indictments on the ground that, pursuant to La.Const. art. 19, § 13 (1921), he enjoyed immunity from prosecution for both offenses. The trial judge granted the motions to quash on this ground. From this adverse ruling, the state appeals.[1]
The relevant facts in this case are not in dispute. In response to a subpoena, defendant testified as a witness before a federal grand jury investigating the activities of the Family Health Foundation, *357 of which defendant was Executive Director. During the course of the investigation, he responded at length to questions concerning his duties as a consultant for the South Louisiana Port Commission. Defendant was subsequently invited to appear before the St. Charles Parish Grand Jury, which was investigating activities of the South Louisiana Port Commission. Defendant did not accept this invitation, and was not thereafter subpoenaed to appear. Instead, the state presented for the grand jury's consideration a transcript of the testimony that he had earlier given before the federal grand jury. In answer to defendant's prayer for oyer, the state averred that it also intended to use his testimony before the federal grand jury in the trial.
In sustaining the motions to quash, the trial judge held that defendant was immune from prosecution on the basis of La.Const. art. 19, § 13 (1921),[2] which provides as follows:
Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony.
The fifth amendment to the United States Constitution states that no person shall be compelled in any criminal case to be a witness against himself. Art. 1, § 11 of the Louisiana Constitution of 1921 affords the same guarantee, "except as otherwise provided in this Constitution." The 1921 Constitution does provide otherwise. Art. 19, § 13, cited in full above, authorizes the compulsion of self-incriminating testimony in bribery investigations. But the prosecution may compel a witness to testify against himself only if it guarantees that his testimony will not be used against him in any judicial proceeding, except for perjury in giving such testimony; an immunity statute is constitutional only if its scope is coextensive with the privilege against self-incrimination. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Hence, neither the compelled testimony of a witness that was obtained in one forum, nor the fruits of such testimony, can be used against him in another forum. Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
The fifth amendment, however, like the instant immunity provision, proscribes only the use of compelled inculpatory testimony, not testimony given voluntarily. The privilege against self-incrimination is a personal right, which may be waived. It is "solely for the benefit of the witness, and is deemed waived unless invoked." Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). A witness therefore waives the privilege by exercising his option to answer. 8 J. Wigmore, Evidence § 2276, at 456 (McNaughton rev. ed. 1961).
Our review of the record in this case convinces us that defendant knowingly and intelligently waived his privilege against self-incrimination when he testified before the federal grand jury regarding his involvement with the South Louisiana Port Commission. Prior to questioning, defendant was advised of his constitutional privilege against self-incrimination. The United States Attorney told him that he would not be required to testify against himself or to furnish any information that might incriminate him. He also warned defendant that any information he supplied could be used against him in any legal proceeding. The United States Attorney further advised him that, while he could not *358 have his attorney present during the questioning, he could leave the grand jury room at any time in order to consult with him. At a later point in the examination, he again advised defendant of his fifth amendment privilege. Defendant, in fact, did exercise this privilege on at least one occasion during the questioning when he declined to answer a question propounded. There is no evidence in the record that defendant attempted to exercise his privilege against self-incrimination regarding his involvement with the South Louisiana Port Commission but was prevented from doing so by the United States Attorney. Furthermore, defendant, himself a lawyer, was represented during the investigation by the attorney for the Family Health Foundation. The record discloses that defendant several times asked, and was permitted, to leave the grand jury room to consult with him.
Defendant argues, however, that all of his testimony before the federal grand jury was compelled because of the fact that he testified in response to a subpoena. This argument has no substance. Witnesses called before a grand jury are entitled to exercise their privilege against self-incrimination. Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). In the present case, the United States Attorney emphasized this fact to defendant. It cannot be said, therefore, that his testimony was compelled merely because he was subpoenaed to testify. As one federal court has aptly stated:
Response to a grand jury subpoena does not constitute coercion. The grand jury is authorized to call witnesses in the course of its deliberating and witnesses are required as a public duty to testify. If a witness is asked questions which tend to incriminate him, it is his duty to claim the privilege and refuse to testify.
United States v. Wortman, 26 F.R.D. 183, 205 (E.D.Ill.1960). Accord, Kitchell v. United States, 354 F.2d 715 (1st Cir. 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1970, 16 L.Ed.2d 1032 (1966); United States v. Winter, 348 F.2d 204 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965).
In State v. Smalling, 240 La. 887, 125 So. 2d 399 (1960), and in State v. Callahan, 247 La. 525, 172 So.2d 668 (1965), indictments were quashed against defendants when their testimony before a state grand jury investigating public bribery formed the basis for their prosecution. These cases are distinguishable from the one at bar. In neither Smalling nor Callahan does it appear that the witness was affirmatively warned, prior to questioning, as he was here, that he could exercise his fifth amendment privilege against self-incrimination.[3] However, as stated above, the United States Attorney, in this case, advised defendant of his fifth amendment privilege against self-incrimination and that his testimony could be used against him in any legal proceedings. It is clear that defendant's subsequent waiver was knowingly and intelligently made. Hence, unlike the testimony in Smalling and Callahan, defendant's testimony was not compelled.
Finally, defendant asserts that the testimony became "compelled" when it was introduced in the state grand jury proceeding in transcript form without his consent. This argument likewise has no substance. This court must examine only the circumstances in which the inculpatory testimony was originally given. For once the privilege against self-incrimination is effectively waived, as it was here, then the information given is admissible as evidence at any subsequent trial. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed. 2d 1047 (1968); United States v. Houp, 8 Cir., 462 F.2d 1338, cert. denied, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972).
Since we find that defendant knowingly and intelligently waived his *359 privilege against self-incrimination in the federal grand jury proceeding, we hold that La.Const. art. 19, § 13 (1921) does not immunize him from prosecutions based in whole, or in part, on the testimony therein given. This provision, which would have shielded defendant from prosecution if his testimony regarding public bribery had been compelled, is inapplicable. When the privilege against self-incrimination is waived, "statutory [in this case, state constitutional] immunity disappears." Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949).

DECREE
For the reasons assigned, our ruling on original hearing affirming the quashing of the indictments against Eugene L. Wallace, Jr. is set aside and vacated; and it is now ordered that the ruling of the trial judge sustaining the motions to quash the indictments is reversed, and the cases are remanded to the trial court for further proceedings not inconsistent with this opinion.
SUMMERS, J., dissents.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
Wallace was compelled to testify before the federal grand jury. (He was not compelled to incriminate himself). He could have been compelled to testify in the state grand jury investigation for bribery. He had no right against self-incrimination in the bribery investigation.
But when his compelled testimony was used against him to obtain these indictments, Wallace's rights under Article 19, § 13 of the Louisiana Constitution of 1921 were violated.
CALOGERO, Justice (dissenting).
I dissent from this majority opinion on rehearing because I am of the opinion that the result of our original decision was correct and that the legal issues in this case were adequately resolved there. I am specifically in disagreement with the holding in the majority opinion on rehearing that defendant Wallace was not immune from prosecution after his testimony before the federal grand jury was presented in transcript form to the state grand jury.
The 1921 Louisiana Constitution provides an exception to its general constitutional protection against self-incrimination. Article 19, § 13 provides that:
"Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony."
When there was presented to the state grand jury the transcript of Wallace's previous sworn testimony, he was, in effect, being compelled to testify in a lawful proceeding directed toward investigation of bribery and against a person "who may be," and in fact later was, "charged with having committed the offense of bribery," namely himself. Wallace probably could not have enjoined the prosecutor's presentation of the transcript to the grand jury; indeed, he probably did not even know that his testimony could be and/or would be so used. When Wallace made his statements, they constituted sworn testimony, and their subsequent transcription and use before a state forum does not alter their nature. Although Wallace did not personally respond to questions before the state grand jurors, his words were read to them as his own. At the moment of that reading, Wallace *360 was effectively giving compelled testimony. At that moment, he was entitled, at a minimum, under Article 19, § 13 of the 1921 Constitution, to have further use of the testimony barred. It could not be used by that state grand jury as a basis for indicting him, nor in any judicial proceedings thereafter, because the Constitution demands that "such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony." The indictments returned by that grand jury were, I feel, illegal and void.
Because Wallace was given the opportunity to take the Fifth Amendment by the federal prosecutor, the majority of the Court feels that he was not compelled to testify before either the federal or state forum. I do not agree. Because the testimony was presented in transcript form to the state grand jury, I feel that we must analyze the testimony as if it had been given before the state tribunal. We read these questions and answers as if the state prosecutor were asking the questions of a witness appearing before a state grand jury. When the state prosecutor tells a witness that he has a right not to answer questions which may incriminate him, is that statement sufficient to advise defendant that he need not testify as to matters of public bribery? After all, the state constitutional guarantee against self-incrimination has an exception, "unless otherwise provided." And the Constitution does provide otherwise in relation to public bribery. Any testimony a witness gives about public bribery under these conditions, save testimony given in the face of specific advice from the prosecutor that he need not answer questions about public bribery because he is not being compelled to answer them, is compelled testimony.
For these reasons, I respectfully dissent.
NOTES
[1] "Any person may be compelled to testify in any lawful proceeding against any one who may be charged with having committed the offense of bribery and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceedings, except for perjury in giving such testimony."
[2] "Any person may be compelled to testify in any lawful proceeding against another charged with commercial bribery, public bribery, bribery of voters or corrupt influencing, and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or expose him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony."
[3] In brief, defendants in the instant case argue that, although not mentioned in the opinion of this court, Callahan signed an instrument waiving all his constitutional rights and agreeing that all testimony given by him in the matter before the grand jury could be used against him in any legal proceedings. In the Callahan case the waiver of constitutional rights was read to the witness; he was informed that he could not be compelled to give testimony that might incriminate him, but that there were "departmental regulations" of his employer, the police department, which made his failure to testify grounds for dismissal from his employment. The effect of this waiver, and whether it was voluntary or compelled, was apparently not made an issue before this court.
[4] In re Mitchem, 194 La. 454, 193 So. 704 (1940), came to this court on an interlocutory ruling of the trial judge, who had refused to permit certain testimony from Mitchem, who sought to have a grand jury subpoena duces tecum quashed. The immunity statute there involved (Dart's Criminal Statutes, § 795) differed from the constitutional and statutory grant of immunity which is involved in the instant case. Section 795 of Dart's Criminal Statutes was a grant of transactional immunity, which provided that after self incriminating testimony, "no prosecution can afterwards be had against him concerning matters upon which he has testified."

The 1921 constitutional immunity provision and R.S. 15:468 are "use immunity" statutes, and not "transactional" immunity, and perhaps not "derivative use" immunity statutes; they would perhaps be subject to constitutional attack under the doctrine of Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). The 1972 immunity statute (C.Cr.P. 439.1), however, granting "derivative use" immunity, seems to have been drawn to meet the constitutional standards in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) and Zicarelli v. New Jersey State Commission, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).
[1] On original hearing, we held that the trial judge properly sustained the motions to quash the indictments as to defendant Wallace in Nos. 55,661 and 55,662, and we reversed his granting of motions to quash as to five other defendants indicted in No. 55,661. A rehearing was granted, on application by the state, so that we might reconsider our holding on original hearing that defendant Wallace was immune from prosecution.
[2] The 1921 Constitution was in effect at the time defendant was indicted. La.R.S. 15:468 is an almost identical immunity provision.
[3] In Callahan, the state conceded that the defendant could not have refused to testify before the grand jury probing public bribery. 247 La. at 529, 172 So.2d at 669.